## EMIL REINHARD *v.* THE MAYOR, ALDERMEN, AND COMMONALTY OF THE CITY OF NEW YORK.

A municipal corporation is liable to one who, without fault on his part, is injured by falling through a defective grating in a public sidewalk, where the defect has existed long enough to imply notice of its existence.

The liability of the corporation, in such a case, is not affected by the fact, that if its ordinances had been complied with, by the owner of the property fronting on the sidewalk, the injury would not have occurred, for it was the duty of the corporation to enforce its ordinances, and the public may rely upon such enforcement, and not seek the persons who violate them.

The liability of the city of New York, for the defective condition of a public street, is not affected by the fact that the executive duty of enforcing its ordinances by inspection of streets, and reporting violations of them, is vested by law in the Metropolitan Police, an independent body, and not subject to its authority or control. The general control of all public streets is vested in the city corporation, by law, and the right which it has to pass ordinances, and to appoint a city attorney to enforce them, carries with it the power to make those ordinances effectual by the appointment of the necessary servants to accomplish the object.

APPEAL by the defendant from a judgment at trial term, entered on the verdict of a jury.

The action was brought to recover damages for injuries sustained by the plaintiff from his falling into a coal hole, in the sidewalk, opposite to the premises 144 Thompson street, in the city of New York. It appeared that the plaintiff, while passing along the sidewalk, in the early

part of the evening, stepped upon one edge of a coal slide cover, which protected a vault under the sidewalk. The cover turned over upon being stepped upon, and one of the plaintiff's legs slipping through, the whole weight of his body fell upon the upturned edge of the cover, severing the urethra, and otherwise seriously injuring him.

It appeared that coal slide covers of the kind in question are now generally disused, being thought unsafe. The covers now commonly used are cast-iron covers constructed with spikes which fasten into the pavement. It also appeared that the pavement into which the cover in question was set, was sandstone, which had worn away and rendered the cover more easily displaced, which would not have been likely to occur had the pavement been of blue stone. There was a conflict of evidence as to whether the cover in question was fastened by a chain below, or whether it had rusted off.

On a denial of a motion to dismiss the complaint, the court (DALY, F. J.), charged the jury as follows:

The first question in this case is whether the corporation are liable to pay for this injury in the shape of damages, and that depends on the question whether it was occasioned by their negligence. That is to be determined by the extent of their duty, and whether the intermission of that duty in this particular case, was the cause of this accident. The corporation are bound to keep the streets and avenues of the city in such repair that they may be safely traveled when open for use, and if they negligently suffer them to get out of repair, they are liable for any injuries that may happen through that negligence. When the words " public street " are used, they are used as a compound word, and include the sidewalks, which are more used for pedestrian travel than the portion of the street lying between them. Every thing on which the passenger travels is a part of the sidewalk. Every thing which has been allowed by public regulations to be traveled on is part of the sidewalk. It is a convenience to occupants of houses to be able to communicate from the sidewalk to the vault below, and for that purpose an aperture is allowed under certain securities which have been defined by the ordinances that have been read to you, and

Reinhard v. Mayor &c. of New York.

when these are complied with or conformed to, there can be no negligence on the part of the corporation, or on the part of the owner or occupant of the premises. The aperture, which is used generally for the purpose of receiving coal, has an iron cover, which may be removed when the opening is needed for use, and replaced when that service is over. It is secured in the most common mode by a chain fastened below, or, in more recent cases, by the fitting of the cover, which dispenses with the necessity of a chain. However, as a matter of common use throughout the city, the old grating is still employed, chiefly because it admits light and air into the vault below, and for that reason is, when it is equally well secured, better than the solid plate. It has been commonly preferred, and in use is equally safe.

Now, it is the duty of the corporation to see that these gratings or covers are secure, and, in connection with that duty, the corporation may impose any regulation it considers necessary with regard to them or to the public streets. It may exercise any control it may think proper in the shape of an ordinance, and its officers, whether in the street department, or in any other department, may require such conformity thereto on the part of owners of dwellings, and on the part of those who use the public streets, as may secure the public safety. Whatever may conduce to that, overrides all other considerations; for that is a paramount object, and the corporation, having this duty imposed on it, and being invested with ample powers, is responsible, when, by their negligence, injury occurs. Of course the corporation is not liable where no reasonable exercise of vigilance on their part could advise them of the cause which produced the injury; which I may illustrate by a case tried before me some years ago, in which I held that the corporation were not responsible for the gross negligence of a tenant, whose servant had left a grate opening but partially covered, and that it would be unreasonable to hold them liable for damage under such circumstances. They are not supposed to keep an amount of watchfulness that will enable them to detect every instance in which the proprietor or occupant of property has been guilty of negligence of this description; but if the aper-

ture of a vault has been suffered to fall into decay, until the grating has become notoriously unsafe by reason of such neglect, the responsibility rests with the corporation. It is impossible that a defect of this kind should exist without the knowledge of some one. This insecurity in the covering of vaults in sidewalks, is a matter of common occurrence. I have frequently felt called upon to stop and have a vault covered; and when a policeman sees a vault uncovered, it is to be taken for granted that he will communicate with the occupant of the building, and enforce its being secured.

This case, therefore, turns upon the question, whether the covering of this vault was one unfitted for use; whether it had worn away by attrition in the progress of time, so that the bed, which is alleged to have been of brown stone, was no longer fitted to retain the iron grating with security, or to prevent it from turning round, or up and down. If that were the case, it was of no consequence what chain was attached to it below; for the chain would only keep it steady in a particular part, and it might revolve on its axis. If, however, it arose entirely from the fact of its not being fastened below, then it would be a case of negligence on the part of the owner of the building; if not, then the question is, whether it was of such long standing, and so obvious in its character, that the corporation must have known it through the officer whose duty it is to ascertain the condition of the public streets, and to see that they are secure for the safe transit of travelers. That is a question of fact for you to determine.

The defendants' counsel asked the court to charge the jury as follows:

1. That the defendants, having passed resolutions regulating the manner in which gratings should be constructed and secured, and vaults covered, have discharged their entire duty, and are not liable in this action.

The court refused so to charge, and defendants' counsel excepted.

2. That unless the jury believe from the evidence, that the defendants had a direct notice of the defective condition of the grating and neglected to repair it, they are not liable.

The court refused so to charge, and the defendants' counsel excepted.

At the request of defendants' counsel, the court charged that, unless the jury believed from the evidence that the grating was, at the time of the accident, and had been out of order for such a length of time as reasonably to imply notice to the defendants of its defective condition, the defendants were not liable; and on a like request, the court charged that the defendants were not liable for injuries resulting from a violation of their ordinances.

On a request of defendants' counsel to charge that the police are not the agents or servants of the defendants, and not responsible to them in any degree, the court said: That is abstractly correct. The corporation has not the power over the police which it has over its usual agents. Neither has it over the board of education, and several other bodies which have been made independent of it; nevertheless the municipal authorities are clothed with general powers in respect to the public streets. The corporation can by ordinance impose duties upon the police just as it can upon its agents. It can direct that the streets shall be watched in a particular way.

The case was then submitted to the jury, and they rendered a verdict for $1,000 in favor of the plaintiff.

The defendants appealed to the general term from the judgment entered upon the verdict.

*Richard O'Gorman* and *David E. Dean*, for appellants.

*Malcom Campbell* and *Thomas H. Hill*, for respondent.

By THE COURT.—BRADY, J.—The plaintiff in this action was severely and permanently injured by the upturning of a coal slide grating, which was neither fastened by a chain nor securely resting on its bed. There was evidence to show that it had been insecure for some time prior to the accident, and also evidence that improvements had been made in gratings or covers, which made them, if not absolutely secure, much more so than the one upon which the plaintiff stepped, and which was

the cause of his injury. The defendants claim to be released from liability, because—

1. There was no proof of any notice to them of the insecurity or defectiveness of the grating.

2. That they had enacted an ordinance, which, if complied with, precludes the possibility of such an accident as that from which the plaintiff suffers.

3. That they are not liable for a violation of their ordinances.

4. That the executive duty of enforcing those ordinances, by inspection of the streets and reporting violations of them, is vested by law in another and independent body (the Metropolitan Police), who are not subject to their authority or control; and,

5. That the accident arose from the negligence of the occupants of the house in front of which this grating was located.

There is nothing formidable in this array of objections. The defendants are vested by law with the control of the streets and sidewalks of this city, and it has been held, frequently, that it is their duty to keep them in such condition that they may be safely traveled at all hours, their liability for injuries sustained depending, nevertheless, in some instances, either upon express notice of an existing danger, or proof of its existence for a period long enough to justify the presumption of notice. These rules are so familiar, that it is not considered necessary to cite the cases and laws by which they have been established. Possessing the control suggested, the making of vaults, and the use of vault gratings or covers, is also entirely under the control of the defendants, and they have, by their ordinances, determined by what permission, and in what manner, vaults shall be made, and the grating or covers to be used over the openings in the sidewalk communicating with them (see Revised Ordinances of 1845, chap. 18, p. 251). It will be seen, on examination of these ordinances, that no vault is to be built without permission, in writing, from the Croton Aqueduct Board; that the opening to it on the sidewalk must be within a certain distance from the outside of the curbstone of the sidewalk, or within twelve inches of the coping of the area in front of the house to which the vault shall belong, under certain penalties

prescribed, violations of which involve no consequences except liability for the penalty (*Brown* v. *The Buffalo & State Line R. R. Co.* 22 N. Y. 191), and do not, therefore, relieve the defendants from liability for injuries resulting from such violations. The use of the power possessed by the defendants being exercised, and in a manner which is attended with danger, imposes upon them the highest obligation to secure the safety of the public. It may be said with propriety, although it is not necessary for the purposes of this appeal so to determine, that, by granting permission to make openings in the sidewalk, and to use gratings or covers, the defendants are principals, and the act chargeable upon them as such. They delegate a power by such permission, which is to be employed by another, with their authority—*facit per alium, facit per se.* Without asserting this, however, to be a legal consequence of their permission, there is no doubt, as stated, that by permitting the street to be used for a hazardous purpose, they are required to exercise the greatest caution and vigilance. The evidence in this case shows conclusively that such caution and vigilance have not been employed. The grating which the owner of the house was permitted to use was not the best that could be procured, and it was not, in all respects, the best of its kind. It rested upon a brown stone bed, which was not as well adapted for the purpose as a blue stone, the former being softer and more liable to wear away—which was illustrated by the condition of the stone on which the grating in this case was laid. Of this, the defendants must be presumed to have notice. When the permission is given, the defendants must see that all the safeguards declared and known shall be adopted, and, as long as a thing dangerous in itself is employed, to see to it that it shall be so employed that no person may be injured. In using the thoroughfares of this city, the public are not called upon to examine ordinances, do police duty, or take the place of the employees of the defendants. They have the right to assume that they may safely traverse them at all hours, exercising only that degree of caution which every reasonable person is supposed to observe. They may not rush into danger with impuni-

ty, or set at defiance the obligation to regard their own personal safety, upon an assumed infallibility of the defendants in reference to the street ; but, where there is no apparent danger, they are justified in relying upon a safe enjoyment of the highway. There was no apparent danger to the plaintiff, and he was entirely free from negligence. It appears, therefore, in this case:

1. That the grating or cover of the vault opening was insecure, and had been for some time.

2. That a safer covering was in use.

3. That the plaintiff was injured while in the legal enjoyment of the highway ; and,

4. That he was free from negligence.

These facts are sufficient to create a liability on the part of the defendants. If the ordinances, as they say, when complied with, are sufficient to prevent such casualties as complained of here, why do they not enforce them ? We are not to stop here to inquire who is to report the violations of ordinances, inasmuch as that cannot in any way affect the plaintiff's rights. If he had known of the defective covering on which he stepped, he would be without a remedy, and would have been guilty of negligence, not only in regard to his legal rights, but toward the community, if he failed to inform the authorities. The defendants must be held to the responsibility growing out of obstructions or excavations in the street, unless excused by want of express or constructive notice, notwithstanding their ordinances in reference to such obstructions or excavations. The public may rely upon their enforcement, and not seek the persons who violate them. The defendants occupy, except in cases already suggested, the relation of insurers against injuries arising from a proper use of the streets as such. If the metropolitan police are not, and cannot be, required to report violations of law, then, as a co-ordinate branch of the city government, it is as a department very defective. There is no proof of this fact, however. It cannot be regarded as a legal proposition, and it is not to be assumed that the police commissioners relieve the force from the discharge of such duties. The corporation attorney is the officer of the defendants upon

whom the duty devolves to, prosecute for violations of the ordinances; and the defendants are bound to see that the necessary force is employed to make his trust available, at least in reference to such violations as endanger the public safety. The right to pass ordinances, and the appointment of an officer to enforce them, carries with it the power to make those ordinances effectual; and if the police cannot be instructed and required to make examinations, and report to the proper person, then the defendants should have the necessary servants to accomplish the object named. I can discover no reason why this judgment should not be affirmed.

Judgment affirmed.