JOHN RADWAY AND OTHERS, APPELLANTS, v. JEREMIAH
BRIGGS AND NATHANIEL BRIGGS, RESPONDENTS.

*Lessees of Wharf—Possession—Damage—Negligence.*

In order to maintain an action against a lessee of a public wharf in the city
of New York, for damage sustained by the Plaintiff by reason of the lessee's
neglect to keep such wharf in good repair and safe for public use, it is not
necessary to show the Defendant in exclusive possession of such wharf. It is
sufficient to show that Defendant accepted the lease and exercised rights
under it.

APPEAL from the Common Pleas in the city of New York.

The Plaintiffs brought their action to recover the value of a
horse and cart, and a load of merchandise. On the trial they
proved that in March, 1858, their carman drove upon one of the
public piers in the city of New York, with a load of merchan-
dise, to deliver it on board of a steamer lying there; that whilst
there the horse became unmanageable, backed into the river, and
was drowned. They also proved that the string-piece on the
westerly side of the pier (the side on which the horse backed off)
was in an unsafe condition, being not more than *two inches* above
the surface of the pier.

They further proved a lease from the corporation of the city
of New York to the Defendants, bearing date March 4th, 1855,
which first recited that the corporation was the owner of several
wharves, slips, piers, or bulkheads in said city, and entitled to col-
lect and receive the wharfage and slippage thereof, and had
agreed to sell and assign their right to the collection of wharfage
at some of them to the Defendants, for the term of five years from
the 1st day of May then ensuing. This instrument then pro-
ceeded to convey to the Defendants, " their heirs and assigns, all
and singular the wharfage which shall or may arise, accrue, or
become due, between May 1st, 1855, and May 1st,' 1860, for the
use or occupation, by vessels of more than five tons burden, of
any of the wharves, slips, piers, or bulkheads belonging to said

parties of the first part in the East River, or of, in, or to which they are entitled to receive and collect the wharfage and slippage thereof, at the west side of Pier No. 12, and the bulkhead adjoining the foot of Old Slip, excepting all such docks, wharves, piers, and slips as are otherwise leased by said parties of the first part, or used for ferry purposes." The Defendants covenanted " during the continuance of said lease, to keep the said wharves, piers, or bulkheads in good repair, at their own proper cost and charge, and surrender the same at the expiration of said term, in as good condition as they are at the time they take possession thereof, the natural wear and decay excepted."

They also covenanted that, during the same period, they would " keep the wharves in good condition and safe and proper repair, *including especially the string-pieces*, and other superficial portions thereof, *for safe usage*," &c., &c.

They also covenanted that they would, " on the last day of the term demised, or other sooner determination thereof, surrender and yield up the said rights and privileges hereby demised, with all and singular the rights, members, privileges, and appurtenances thereto belonging, into the hands and possession of the parties of the first part, without fraud or delay." The Defendants agreed further, on their part, that no demand should be made, nor any compensation received, for the occupation of the top or surface of any of the public wharves or piers, for any purpose whatever.

At the close of the Plaintiffs' evidence, the Defendants' counsel moved to dismiss the complaint, on the ground that the Plaintiffs had not shown that the Defendants were in possession of the premises in question at the time of the occurrence, and the Court granted the motion.

The General Term affirmed the judgment, and the Plaintiffs appealed to this Court.

*Charles N. Black* for Appellants.

*Benedict, Burr & Benedict* for Respondents.

FULLERTON, J.—It was not necessary for the Plaintiffs to prove

that the Defendants were in the actual possession of the pier, to enable them to recover in this case.

They were not entitled to the exclusive possession, by the terms of their lease; neither was it in the power of the corporation to grant it to them.

A public pier is a part of the public highway, and must be devoted to the public use. The exclusive use of a public pier may be granted by the Common Council of the city of New York to vessels engaged in commerce, or for commercial purposes (Davies' Laws, 705), but not to individuals for private purposes, to the exclusion of the public. It has been suggested, too, that this must be done by the city in its legislative capacity, and not by mere contract through its officers (The Mayor *v.* Rice, 4 E. D. Smith, 609). By various statutes of this State, authority is given to the owners of private wharves or piers, and to the corporation as to public piers, to collect wharfage and slippage from vessels that occupy them—the rates being fixed by law.

The accident in this case occurred on one of the public piers of the city of New York, for the use of which the city had the right to collect wharfage, being charged, of course, with the correlative duty of keeping it in repair. The legal effect of the instrument given in evidence on the trial was to subrogate the Defendants to the place of the corporation, investing them with all the rights and subjecting them to all the duties of that body, as the owner of a public pier.

This will appear plain when reference is made to the terms of the instrument. It sells and assigns the *wharfage*, which shall or may arise, or accrue, during the time covered by the lease, the lessees agreeing to keep the premises in repair.

But it does not purport to give possession of the property; on the contrary, the lessees were required to covenant that "no demand should be made, nor any compensation received, for the occupation of the *top* or *surface* of such wharves or piers, for any purpose whatever."

The Defendants in this case, therefore, had no other right in or to the use or possession of the property not enjoyed by every

other citizen in common with them, except the right to collect the wharfage to which their agreement entitled them, and the right to enter for the purpose of making repairs, in compliance with their covenant.

I have not overlooked the fact that the lessees covenanted " to surrender the piers at the expiration of the time, in as good condition as they were at the time they took possession thereof."

But these were not apt terms to express the real meaning of the parties. This language was used in connection with, and is a part of, the covenant to keep in repair, and was designed to express the condition which the property should be in at the expiration of the term, rather than to define the tenure by which the Defendants held it.

This is rendered the more apparent when we refer to another clause, at the close of the instrument, where the lessees covenant to " surrender and yield up the *rights and privileges* demised."

The naked right to collect wharfage (which was all that the Defendants possessed) is incorporeal in its nature, and is incapable of any other or different possession than grows out of the right itself, and is incidental thereto, and which attached, by force of the agreement which originated it, immediately on its execution and delivery (East-Haven *v.* Hemingway, 7 Conn. 186, 203).

When, therefore, the Plaintiffs were nonsuited on the ground that they had not shown that the Defendants were in possession of the premises under their lease, the Court overlooked the distinction between the bare right to collect wharfage and the actual physical possession of the premises in connection with which the right was exercised.

If a turnpike company should sell and assign the tolls which it had a right to receive, the assignee agreeing to keep the roadbed in repair, in an action against such assignee for damages growing out of his neglect to perform his duty, it would not be pretended that it would be necessary to prove that he had entered into possession of the highway.

It was necessary, however, to prove that the Defendants accepted the grant, in order to make them liable for the Plaintiffs' loss ;

this being quite a different thing from the question of the possession of the premises.   But that acceptance was proved by the introduction of the lease, for it was signed by the Defendants themselves.

Even if that had not been the case, the acceptance would have been presumed, upon the principle that a man is presumed to accept that which is a benefit (Camp *v*. Camp, 5 Conn. 291 ; Doe *v*. Marston, 3 Wend. 149 ; Bailey *v*. Culverwell, 8 Bar. & Cres. 448 ; Townson *v*. Tickell, 3 Bar. & Ald. 31).

Having accepted the grant, the Defendants were bound to keep the premises in repair.   The damage which the Plaintiffs sustained was caused by their neglect, and they are liable for it. The city exercised due care on its part, when it required the Defendants to keep the premises " in good condition, and *safe* and proper repair, including especially the *string-pieces*."

And this the Defendants failed to do.

It was the want of a safe and proper string-piece that caused the accident, and the Defendants are clearly liable (Burton *v*. Barclay, 5 M. & Payne, 785 ; Mayor of Albany *v*. Cunliff, 2 Com. 165 ; Henley *v*. The Mayor of Lyme, 3 B. & A. 77; Brett *v*. Cumberland, Cro. Jac. 399, 521 ; 4 Cush. 277).

The judgment should be reversed, and a new trial ordered.

All concur, except HUNT and BOCKES, JJ., not voting.

Reversed.

JOEL TIFFANY,<br>State Reporter.