Folger, J.
The defendants in this action were the owners of the half of the pier, upon which the accident befell, by which the injury was done to the plaintiff’s intestate. They were not then in the actual occupation of it. They had leased it to others for a rent resérved to themselves. Their lessees were in the actual use and occupation of it. They had taken a covenant from their lessees to keep the pier and bulkhead in order and repair at their own cost. It is established by the verdict of the jury, under the charge of the court, that the pier was in a defective condition on the 1st day of May, 1865. That was the day of the oral lease from the defendants. The oral lease then made was afterward merged in a written lease. By the verdict it was also established, that the injury was received in consequence of the insecure condition of the pier, which existed on the day above named, and that the pier was demised by the defendants when in that insecure condition.
*31 We think it is clear that the intestate was lawfully upon the south half of the pier. It may be that it was not a public place or highway in the fullest sense of those terms. It was, indeed, private property to a certain degree. (Vandewater v. The City of New York, 2 Sandf., 258; Thompson v. The Mayor, etc., 11 N. Y., 115.) Though private property, it was held as such for public objects. There is an implied license to vessels upon navigable waters, to enter and occupy piers built into or lying adjacent to such waters, in the manner and for the purposes contemplated by their erection. The keeping of such a pier is likened to the. keeping of an inn; and a general license is given to all persons to occupy it for lawful and accustomed purposes. (Heaney v. Heeney, 2 Den., 625.) One. prime purpose is for the vessel to discharge its cargo thereupon. As it may not discharge its cargo without the aid of laborers, all persons hired and acting as such, are upon the pier by right for a lawful purpose. The owner or occupant of a pier may terminate this general license, or may withhold permission to enter from a particular person. (Id.; Bogert v. Haight, 20 Barb., 251.) There is no pretence that in this case there had been such action. The piers in Hew York city are not different in these respects from those elsewhere. (Murray v. Sharp, 1 Bosw., 539 ; see, also, Stevens v. Rhinelander, 5 Robt., 285.) As we said in Clancy v. Byrne (MS. decision of this court not yet reported),* it is not necessary for the purposes of this case 'to declare that this pier was a public place or highway. It was, however, thrown open for entrance upon, by all persons of the calling of the intestate. By the use to which it was put by the tenants and occupants (a use which was contemplated and intended by them and their lessors), from which a profit to them was directly or indirectly derived, and which persons of the calling of the intestate aided, there was a license and an invitation given to him to come and go over this pier, and to remain thereon in the following of his employment. And thus, when the injury occurred to him, *32 he was lawfully therein his avocation. (Crosby v. Hill, 4 C. B. [N. S.], 556, which was the case of an obstruction negligently put in a private way, over which plaintiff had invitation to pass; Frees v. Cameron, 4 Rich., 228, which was the case of a negligent omission by a shop-keeper, by which a customer was injured ; and see Indermaur v. Dames, L. R. [1 Com. Pl.], 274; S. C. in error, 2 id., 311.) Though the pier be private property, and though it be granted that the owner or occupant thereof might at any time close it and refuse entrance upon it to any and all persons, yet so long as it was kept open to that portion of the public of which the intestate was one, for the profit of the defendants’ lessees, there was upon such lessees primarily, the duty of taking care, so long as it was thus kept open, that those who had lawful right to go there, could do so without incurring danger to their persons. (Lan. Canal Co. v. Parnaby, 11 Ad. & Ell., 223 ; Thompson v. N. E. Railway Co., 3 Best & S., 106.) Smith v. London and St. Kath. Docks Co. (L. R. [3 Com. Pl.], 326), is directly in point. There the .defendants were the owners of docks. It was held, that as they carried on the business of a dock company, and as that business consisted partly in providing access to the ships lying at the docks, they were liable for a defect in a gangway, known to their servants, by which the plaintiff visiting a ship in the exercise of his calling, was injured.
The defendants were the owners of the pier, and the lessors of it, to those who, as occupants, were primarily charged'with this duty. They leased it to those occupants, in contemplation of the use to which it was to be put, indeed, so that such use might be made of it. As to the defendants, then, the plaintiff’s intestate was lawfully upon the pier, and as to them, it was to him as if a public place or highway, upon which he had right to go, and to remain while engaged there in his ordinary calling. In this regard then, the plaintiff’s intestate was free from negligence contributing to the injury received. In other respects the question of contributory negligence wras fairly submitted to the jury, upon the con *33 flicting testimony, as to the condition of the pier apparent to those going upon it, and upon the conflicting testimony as to the weight which had been put upon it, and as to what should be its capacity to uphold a burden.
It is true, that there was testimony, that the stevedore in whose employ the intestate was, or that the foreman under whom the intestate was laboring, was warned that the pier was becoming too heavily loaded. There is no proof that this warning came to the knowledge of the intestate (Godley v. Haggerty, 20 Penn. St., 387); nor is there any circumstance in the case which made notice to the stevedore or his foreman a notice to the intestate, so as to charge him with contributory negligence ; nor is it certain, from the proofs, that if the pier had been in sound condition it would not have held up all the iron and other weight which had been laid upon it. The intestate had a right to assume, as against those bound to maintain the pier in good condition, that it was in a fair and ordinary state of security and strength, and able to sustain all the weights of which such a structure is usually capable. Hence we hold, that the first point of the defendants, that the plaintiff’s intestate was liable to the imputation of contributory negligence, is not maintained.
It has been already stated, that the defendants demised the premises to other parties, binding them in a covenant to keep the pier in good order and repair. The defendants were not in possession of the premises at "the time of the accident. It is claimed that thereby the defendants are under no liability to the plaintiff. We have shown that this pier, so far as the intestate was concerned, was in the nature of a public place, whereon he was lawfully engaged. We have shown that it was of such nature that there was as to him a duty resting somewhere, to keep this pier in a reasonably sound and secure condition. Primarily, this duty is upon the occupants of the pier, and, in the absence of any covenant from their lessors to keep the same in repair, that duty, as to all defects arising after their tenancy began, would altogether rest upon them, and there would be no liability upon the *34 lessors. But there may be a state of facts which will cast a liability upon the lessors also. The neglect of this duty, the suffering the pier to fall into such a state of decay, as to become dangerous to those lawfully coming upon it, is the creation of a nuisance. For a private nuisance is any thing unlawfully or tortiously done to the hurt or annoyance of the person, as well as the lands, tenements and hereditaments of another. (3 Blk. Com., by Sliarswood, 215.) Where there has been a nuisance of continued existence upon demised premises, the lessor and the lessee may both be liable for damages resulting therefrom. The lessee in the actual occupation of the premises, if he continues, the nuisance after notice of its existence and request to abate it, and the lessor, if he at first created it, and then demised the premises with the nuisance upon them, and at the time of the damage resulting therefrom, is receiving a benefit therefrom by way of rent or otherwise. (Roswell v. Prior, 2 Salk., 459 ; S. C., more fully reported, 12 Mod., 635; Staple v. Spring, 10 Mass., 72 ; see Rich v. Basterfield, 4 Man., Gr. & Scott, 783, and cases there cited.) In Todd v. Flight (9 C. B. [N. S.], 377), it is held, that the owner of premises who lets them to a tenant in a dangerous condition, and who permits them to remain so until, by reason of want of reparation, they fall upon and injure the house of an adjoining owner, is liable to an action. It is there said, after noticing several cases: 11 If the wrong causing the damage arises from the nonfeasance or the misfeasance of the lessor, the party suffering damage may sue him. And we are of the opinion that tire principle so contended for is the law.” And this principle, that the owner of premises who leases them when they are already a nuisance, 'or must become so from user, and receives rent, is liable for damage to a stranger happening therefrom, whether the owner be in possession or not, is maintained in cases in the courts of this country. (See note to case last cited, 99 Eng. Com. Law, 390.) See, also, House v. Metcalf (27 Conn., 631), where it is held, that though the premises were in the exclusive possession and control of a tenant, yet, as at the time of the acci *35 dent, the cause of it was in the same condition as when the lease was made, the premises were used in the manner contemplated and intended by the parties to the lease, and that for such use the defendant was to be paid his stipulated compensation by way of rent, the defendant was liable. The defendants urge that an absolute deed would put an end to the former owners’ liability, and that a lease is pro tanto as effectual as a deed, inasmuch as for a space it prevents the lessor from entering upon the premises to make repairs. This leaves out of view, that by a lease reserving rent, the owner and lessor derives a profit from the continuance of the nuisance; which is one of the grounds on which went Roswell v. Prior (supra). Inability to enter and remove the nuisance, except as trespassers, is not an excuse, as the defendants urge. (Thompson v. Gibson, 7 M. & W., 456; Waggoner v. Jermaine, 3 Denio, 306.) In 12 Modern, 635-639, the court say: “ The putting it out of one’s power to abate a nuisance, is as great a tort as not to abate it when it is in your power to do it.” Again, it is said that the lessee controlled the use, and that the danger was due not to the condition of the pier, but to its use in that condition. This position would be of some strength, if there had been any customary mode of using the pier which would not bring into effect its dangerous condition. A lessor of premises, not per se a nuisance, but which become so only by the manner in which they are used by the lessee, is not liable therefor. (Rich v. Basterfield, supra.) But that rule may not apply here. A pier so defective and insecure when it is leased, as that a subsequent injury, received in the proper use of it as if sound, is consequent upon its original condition, is, for the purposes of such an action as this, per se a nuisance. Its effect upon third parties is not the result of the manner of the use of it by the lessee. There is but one use to be made of it — as a place at which vessels may lay, and put off and take on their cargoes. For that use it is rented; and used therefor, it is the original insecure condition of it which is the cause of an injury. *36 Though it should be, that in the first construction of it, it was well and substantially built; yet the suffering it, by continued use, to become decayed, and the neglecting of needful repairs, is the same as if it was placed, on the day before the lease, in the unsafe condition of it. Moreover, there was testimony tending to show an original faulty mode of construction. "When leased in that condition, for a rent reserved to the defendants, they became liable from injuries resulting to an innocent person, unless there be something else in the case which will relieve them.
It is urged that, by taking from the lessees a covenant to keep the premises in good order and repair, the defendants have protected themselves from liability to the plaintiff. As to this, it is first to be observed that by giving this covenant, the lessees did not increase nor change their liability to the plaintiff’s intestate, nor to that portion of the public which might lawfully use their pier. As tenants and occupants of the pier they were liable, though no covenant had been given. Their relation to strangers is in no wise changed by the existence of the covenant,-so that the question is, whether the lessor of premises, demised in a ruinous state, may shield himself from liability to strangers, for damage resulting from their defective condition, by taking to himself a covenant like that here found. It is plain from what we have before said, that thére was once a duty upon the defendants, °as owners of the pier, to maintain it in a safe condition. They did not do this. They leased it in its unsafe state, and took a rent for the use of it. Thereby they became liable to any one lawfully upon it, who suffered damage in consequence of its state of insecurity. The pier was unsafe on and before the day of the lease. The defendants were certainly, at that time, charged with the duty of putting and keeping it, in a safe condition. In the language of the court, in Roswell v. Prior (as reported 12 Mod., 635), “this action is well brought against the erector (of a nuisance), for before his assignment over, he was liable for all consequential damages and it shall not be in his power to discharge himself by grant *37 ing it over.” Can the fact that the granting over, is upon the taking back a covenant to keep in repair, work a discharge of that liability ? The person injuriously affected by the ruinous state of the premises demised has no right nor privity in the covenant. He is not given thereby a right of action against the lessee greater nor more sure than he had before. He has the right without the covenant. The covenant is a means by which the lessor may reimburse himself for any damages in which he is cast by reason of his liability. But it is an act and obligation between himself and another, which does not remove nor suspend that liability. It is not so, that a person upon whom there rests a duty to others may, by an agreement solely between himself and a third person, relieve himself from the fulfillment of his duty. Surely an ineffectual attempt to fulfill it would not; as if in this case insufficient repair of the pier had been made by a builder who had contracted with the lessor to do all that was needful to make the pier secure for all comers. A covenant taken from a lessee, to keep in order and repair, is no more effectual than a contract with a builder to the same end. Both may afford an indemnity to the lessor, but neither can shield him from liability. The appellants cite Radway v. Briggs (37 N. Y., 256), where the court says (p. 260) that: “ The city exercised due care on its part, when it required the defendants to keep the premises in good condition, and safe and proper repair.” It does not appear in the case, whether the unsafe condition of the pier existed at the time of the lease from the city, or arose afterward. Hor is the remark quoted other than obiter, for the question was not there, whether there was a liability on the part of ttie lessor. The remarks of Woodruff, J., in Taylor v. The Mayor, etc. (4 E. D. Smith, 559), apply to a case where the want of repair had arisen after the leasing. And so of the remark of Johnson, J-., in Bellows v. Sackett (15 Barb., 96-103), if, indeed, it is not nullified by this succeeding utterance: “ I am inclined to the opinion, that in any event, the plaintiff may resort directly to the owner, as the one who keeps up and maintains the erection which causes *38 the injury, whoever may be the temporary occupant under him.” The appellants also cite Blake v. Ferris (5 N. Y., 48), and cases like it. These are concerned only with the proper application of the rule of respondeat superior, and hold that one having a right or license to do a thing in a proper way, and having contracted with another thus to do it for him, is not liable for the neglect of that other’s servant, engaged in the work. They are not applicable here. There is a decision not cited by the appellants, which is more in point. It is Pretty v. Bickmore (L. R. [8 Com. Pl.], 401). There an owner of premises let them, agreeing to put them in repair (I think we must understand, to a certain extent only), and took from the lessee a covenant to keep them in repair. The iron covering of the hole to the coal-cellar was, at the time of the demise, so out of repair as to be dangerous. The lessee was in possession and had paid rent, and the workmen of the lessor were upon the premises making the repairs agreed by him to be made. An injury was caused to the plaintiff by stepping upon the defective iron covering. The plaintiff sued the lessor and owner, and was nonsuited at the trial on the ground that the duty of keeping the premises in repair was by the lease cast upon the tenant, and that the defendant, the lessor, was not liable. The nonsuit was sustained, on a motion for a new trial. The ruling was put upon the ground, that it is the person who is in possession and who allows the dangerous want of repair to continue, who is responsible to the public, and stress was put also upon the fact that the lessee had covenanted to keep in repair. The case is attempted to be distinguished from Todd v. Flight (supra), in that there was in that case an act of the lessor, authorizing the continuance of the dangerous state of the . premises. The ground of the decision, in Todd v. Flight, is, in Pretty v. Bickmore, said to* be, that the defendant let the houses, when the chimneys were known to him to be ruinous, and. in danger of falling, and maintained them in that state. But here the pier was in a ruinous and dangerous condition when it was demised. It was, up to the day of the demise, the duty of the defend *39 ants solely, to see that it was in a safe condition. There is no suggestion in the case of want of knowledge on their part of its actual condition when leased by them. And the facts of the case are such as that they are chargeable with knowledge of its actual dangerous state. It is true, that Todd v. Flight, came up on demurrer to the declaration, which alleged knowledge on the part of the defendant of the ruinous condition of the premises; and there was therefore that element of knowledge in the case, and which is adverted to in the opinion delivered. But the principle is also there recognized, that if the wrong causing the damage arises from the nonfeasance or misfeasance of the lessor, the party suffering damage from the wrong may sue him. The nonfeasance, or the misfeasance is, that being the owner of premises in a dangerous condition for the public, he has leased them in that condition without first making them safe. If Pretty v. Bickmore is put upon the ground that the covenant of the lessee to keep in repair absolved the lessor from that duty toward the public, why is he not absolved without covenant? For whether or not covenanting so to do, the tenant or occupant of premises, is under the duty to the public to keep them in a safe condition, so far as the public have concern therewith. (Reg. v. Watts, 1 Salk., 357.) The decision in Pretty v. Bickmore seems to ignore the rule announced in Roswell v. Prior (supra), and followed and established in many subsequent cases. I do not think it is in harmony with them, or that it is to be followed. There is a like decision to Pretty v. Bickmore, in the Massachusetts’ courts (Leonard v. Stover, 1 Am. Law Times Rep., [N. S., No. 9], 414), but for the same reasons we do not follow it.
The judgment appealed from should be affirmed, with costs.
Church, Ch. J., Allen and Bapallo, JJ., concur; Grover, Andrews and Johnson, JJ., dissent.
All concur in proposition that if defendants are liable the covenant of their lessees to repair would not shield them from liability.
Judgment affirmed.

 58 N. Y., 129.