## WHALEN V. GLOUCESTER.

*Negligence — duty of private person as to use of street — opening in sidewalk — landlord's liability for failure to repair.*

Plaintiff was in May, 1868, injured by the upturning of a coal-hole cover, in the sidewalk in front of defendant's premises. The cover had been out of repair and dangerous for a long time previously. At the time the premises were in possession of a tenant under a lease, which had been renewed shortly before May 1, 1868, while the cover was out of repair, when the defendant agreed to put the premises, and the tenant to keep them, in good repair. *Held,* that defendant was liable for the injury to plaintiff (1) by reason of her obligation to the public, in the use of the street for her private purposes, to keep the same safe, and (2) by reason of her failure to put the premises in repair, as agreed with her tenant — even if the possession of the tenant would otherwise excuse her.

A PPEAL by defendant from a judgment in favor of plaintiff, entered upon the verdict of a jury.

The action was brought by Margaret Whalen against Elizabeth A. Gloucester, to recover for personal injuries received by plaintiff from falling through a coal-hole cover, negligently out of repair, in the sidewalk in front of defendant's premises. The opinion fully states the facts.

*F. P. Bellany,* for appellant.

*R. W. Townsend* and *A. R. Dyett,* for respondent.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

BRADY, J. The plaintiff in this action was severely and permanently injured by the upturning of a coal-slide cover on the sidewalk of the defendant's premises, which was neither fastened by a chain nor securely rested on its bed. The plaintiff, on alighting from a carriage on the 25th of May, 1868, put her foot upon the cover. It turned and her leg went down the hole or slide, and she was severely cut by one of the prongs or plugs forming a part of the cover. The premises were at the time in the possession of the defendant's tenant, and had been for several years previously. On the 1st of May, 1868, however, he renewed his lease of the premises,

at which time, or rather previous to which time in the March preceding that date, the defendant, by the agreement of renewal, was to put the house in good order, and the tenant was to keep it in that condition. There was evidence given showing that the cover had been in a dangerous state for months prior to the 1st of May, 1868, one of the three prongs necessary to keep it in its place having been broken at that time. The witness who gave that evidence also testified that he slipped over it himself and saw that there was one plug off. "I was," he said, "nearly falling in." It was also shown that the defendant knew a child had been injured or endangered at the cover. Mr. Peiser, one of the plaintiff's witnesses, who went to see defendant on behalf of the plaintiff, detailed a conversation with her in which he said, among other things, that a child had been injured at the same place, to which she said, "Oh, no, the child was not injured. The child was not hurt at all." It is true that the defendant denied having had any conversation about a child; but the testimony was positive on the part of the witness. The defendant did not deny the statement of her tenant that she agreed to put the house in good order, or have repairs done, nor did she show any permission to use the cover obtained from the city authorities. It seems to have been conceded on the trial, however, that it was placed where it was by proper license for that purpose.

Some exceptions to the introduction of evidence were taken during the trial, and an exception also taken to the charge. The presiding judge placed the defendant's liability chiefly upon the proposition that if the covering of the vault or slide was in an insecure condition at the time the tenant went into possession on the 1st of May, 1868, under the new tenancy, she was responsible for the injuries received by the plaintiff. The accuracy of this view is now presented for consideration. The liability of the Mayor, Aldermen and Commonalty in such a case as this has been settled (*Reinhard* v. *Mayor of New York*, 2 Daly, 243), although the cover may have been manufactured after their regulation on the subject was made, and for the reason that it is their duty to see to it that the covers are secure and kept so. The only proviso limiting such responsibility is that the Mayor, etc., shall have actual or constructive notice of the defect in the cover, or of its insecurity.

Assuming, and the assumption is for her benefit, that the defendant had permission to use the cover as provided by the ordinances

(see Revised Ordinances of 1845, chapter 18, page 251), the use
of it necessarily imposed upon her the obligation to keep it in repair
fit for the purpose, and perfectly safe ; as safe as the street itself
should be for the passer-by.  A cover becomes a part of the high-
way or walk, and must be as secure to the wayfarer as the walk
itself.  The public are not called upon to examine ordinances relat-
ing to such a subject, or to do police duty, or to stop and examine
the vault or slide covers ; they have a right to assume that they are
safe, unless it is apparent and without examination that they are
not.  *Reinhard* v. *Mayor of New York*, *supra*.  The defendant,
having sought permission to use the street or walk for her private
benefit, took upon herself, in reference thereto, all the obligations
imposed by law upon the corporation.  She assumed a duty to the
public, and must bear the burden.  *Jones* v. *Chantry*, 4 N. Y. Sup.
63 ; *Radway* v. *Briggs*, 37 N. Y. 256.

"It is a well-settled rule" said FOSTER, J., "that a person who
interferes in any way with a sidewalk in a city, and leaves it in a dan-
gerous condition, is liable for injuries caused thereby, whether he
knew it to be dangerous or not, and irrespective of any permission
from the public authorities to do the work from which the injury
arises."  *Sexton* v. *Zett*, 56 Barb. 119 ; *Davenport* v. *Ruckman*,
37 N. Y. 568 ; *Congreve* v. *Smith*, 18 id. 79.

There is, however, another view to be taken of this case which
presents the theory upon which the defendant was held
to be liable on the trial.  It appeared and the jury so found that
the covering was in an insecure condition, out of repair when the
new term of the defendant's tenant began, and had been so prior
to that time, and that fact was sufficient to cast upon her the obli-
gation to remunerate the plaintiff for her injuries.  The principle
has been decided.  *Swords* v. *Edgar*, 1 N. Y. Sup. Addenda, 23.
The defendants, it appeared in that case, leased a pier to another,
the lessee agreeing to keep the same in repair.  At the time of
leasing there was a defect in the pier, in consequence of which the
plaintiff's intestate received injuries of which he died.  The acci-
dent happened after the lessee had taken possession.  Held, that
the defendants were liable for the injury.  In *Davenport* v. *Ruck-
man*, *supra*, the defendant Ruckman (the action being against
him and the mayor, aldermen, etc., of this city) was, it appeared,
the owner of a house built on leased ground.  He had allowed the
cellar-way to become and remain in a dangerous condition.  He

had sublet the premises agreeing to put them in repair, but he failed to do so, and they were, therefore, in a dangerous condition when the tenant took possession. It was held that this did not operate to relieve the defendant from his liability. It simply added another party to the negligence.

It seems to be clear, therefore, that the defendant is liable on both theories herein presented, namely, upon her obligation to the public in her use of the street for her private purposes, and upon her failure to keep the premises in repair as between her tenant and herself, even if such relation of landlord and tenant, and the consequent possession of the latter, might otherwise excuse her.

The evidence relative to the condition of the plaintiff's health, and to the appearance of the tumor and its cause, was properly received. She had a right to show all the circumstances attending upon and the result of the injuries received. The exceptions thereto were not well taken. The evidence as to the condition of the covering, prior to the accident, was properly admitted, bearing as it did upon the question whether the defendant had put the premises in order at or immediately prior to the 1st of May, 1868. The exception to the judge's charge that the defendant was liable if the defect existed on the 1st of May was not well taken for the reasons hereinbefore assigned.

There is nothing, therefore, contained in the case which calls upon us to reverse or interfere with the judgment, and it must be affirmed.

*Judgment affirmed.*