ANDREW J. DELANEY, Administrator, etc., of JOHN H. DELANEY, Deceased, Respondent, *v.* THE PENNSYLVANIA RAILROAD COMPANY, Appellant.

*Right of the public to go on wharves in the city of New York — duty of the occupants thereof — liability for injuries sustained.*

As a general rule, people have the same right to go upon the docks and wharves of the city of New York as upon any other of the highways and public places of the city, and it is the duty of the occupants of piers and wharves in such city to keep them in sufficient repair for the public safety; in the event of their failure to do so, a person injured by reason of such failure, without fault on his part, is entitled to recover compensation therefor from such occupants.

It is the duty of the occupants of such wharves to warn the public that the docks and wharves, which are in their possession and undergoing repairs, constitute an exception to the general rule, if such be the case.

The principal exception to the general rule that an owner has the right to make such use of his premises as he pleases without being liable for injuries sustained by one who goes upon them, is where the injured party goes upon the land by the invitation, express or implied, of the owner.

Where the real property of a corporation is so situated with reference to the public highway, even though it does not form a part of it, as renders it possible that a person using ordinary care and caution may come upon such property, and thereby suffer injury because of its dangerous condition, the corporation will be chargeable with the damages resulting therefrom.

The public were accustomed, and it was their privilege, to use at pleasure a certain avenue in the city of New York and many of the wharves along its highways. The right to the possession of a particular wharf had become vested in a railroad company by a contract entered into between it and the authorities of the city, of which fact the public could not have had knowledge, and there was nothing to indicate to the people going upon it that they had not the same

right to use it, with the same impunity, as any of the other wharves in that vicinity or along that avenue.

*Held,* that, under such circumstances, it was the duty of the occupant of such wharf to take precautions to warn the public not to come upon the same, and that, in the absence of any such precaution on its part, it was liable for injuries sustained by a person going thereon without contributory negligence on his part.

APPEAL by the defendant, The Pennsylvania Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of December, 1893, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 20th day of December, 1893, denying the defendant's motion for a new trial made upon the minutes.

*Henry Galbraith Ward,* for the appellant.

*Denis A. Spellisy,* for the respondent.

PARKER, J. :

The judgment appealed from awards to the plaintiff $3,500 for damages sustained by reason of the negligent acts of the defendant, resulting in the death of plaintiff's intestate.

In the early evening of October 4, 1891, the plaintiff's intestate, a boy about eight years of age, came upon a dock which the defendant had leased from the city of New York, accompanied by his father and mother and three younger brothers and sisters. They resided in the immediate neighborhood, and their little outing was for the purpose of getting exercise and fresh air.

Defendant's dock, upon which they passed from Thirteenth avenue, had the appearance of a platform built out from such avenue. Reaching the string piece, which was the usual height, they sat down. A few moments later deceased walked away from them, and, after going a short distance, he fell through an unguarded hole in the platform, about eighteen inches wide, and was drowned. This hole was a space between the platform and a bridge, which was being so constructed as to rise and fall with the tide, the purpose of the bridge being to permit ingress and egress for passengers and teams from defendant's ferryboats to the dock.

The defendant had been at work for some time in preparing the dock for ferriage purposes, and the work was so far incomplete that the usual guard on the bridge and platform, intended to prevent persons from falling into the aperture between them, had not yet been erected.

On the night in question this hole had been left unguarded and unlighted, and without any sign to indicate to people passing upon the dock that there was danger of falling through into the water. Respecting defendant's negligence, therefore, the question upon the trial mainly was and now is, whether it owed to plaintiff's intestate any duty whatever. If it did owe to him as one of the public a duty to warn him of the danger of going upon this platform, then the court rightly denied defendant's motion to dismiss the complaint.

Respondent's view of the case is, that this dock was a public street or highway of the city which the defendant by its contract with the municipality had agreed to take care of and keep in repair, and for its failure to do so it became obligated to respond in damages to a person injured, in precisely the same way and upon the same principle as the city would be compelled to respond for an injury happening to a person in one of its public streets, occasioned by the neglect of the city authorities.

In support of this contention he cites *Taylor* v. *Atlantic Mutual Insurance Co.* (37 N. Y. 284) in which it is said " these wharves and piers are streets of the city of New York, for the free passage of all citizens, and are so declared by statute." This rule has been asserted many times in cases where the leases, so called, did not pretend to give the lessee an exclusive possession, but sold and assigned the wharfage which should accrue during the time covered by the lease. (*Radway* v. *Briggs*, 37 N. Y. 256; *Clancy* v. *Byrne*, 56 id. 129; *O. S. N. Co.* v. *Co. T. E.*, 134 id. 461.)

Indeed, the authority of the dock commissioners to confer an exclusive private right in and to a public wharf or pier, such as would permit its inclosure and the erection of structures thereon, was denied even after the passage of chapter 435 of the Laws of 1883.

An attempt of the dock department to grant a license setting aside a pier was characterized as an unwarrantable assumption of power.

But in *People* v. *B. & O. R. R. Co.* (117 N. Y. 150), an action brought to restrain the erection of a shed upon a pier, it was held that the dock department had the power to give to its licensee exclusive possession and the authority to cover the pier by the erection of structures exclusive and permanent in their character.

The contract between the city and this defendant provides that the defendant shall have possession of the property, and by it the defendant became fully vested with the right to erect thereon, at its own cost, such structures as it should deem necessary, in order to enable it to enjoy to the fullest extent the benefits which should accrue from the use which it contemplated making of the property. Undoubtedly, it had the right to keep the public off of the property while making the repairs and improvements in which it was engaged at the time of the happening of the accident, but it took no steps to inform the public of the character of its possession, or of its intention to exclude them from coming upon the property.

Appellant contends that inasmuch as the commissioners had authority to vest in it exclusive possession, and had contracted to do so for the term mentioned in the agreement, plaintiff's intestate was a trespasser in coming upon the property, and, therefore, defendant owed him no duty; that the most favorable view of the relations of plaintiff's intestate towards this property and the defendant was that he was a mere licensee. Therefore, it urges that the case is within the rule of *Murphy* v. *The City of Brooklyn* (98 N. Y. 642, and 118 id. 575), and *Sterger* v. *Van Sicklen* (132 id. 499). Were it not for the well-understood character of the user which the public are accustomed to enjoy of property similarly situated, and its close connection with the public streets, between which and it there were no barriers whatever, appellant's contention would have much force.

While defendant had the right to exclusive possession it has proved no act, so far as the record discloses, which was intended to inform the public that this dock constituted an exception to the general rule, which accords to the people the right to go upon them as upon any other of the highways and public places of the city. That such is the general rule is asserted in *Gluck* v. *Ridgewood Ice Co.* (31 N. Y. St. Repr. 99; affd., 125 N. Y. 728) and *O. S. N. Co.* v. *Co. T. E.* (*supra*).

In view of the existence of such rule, and the generally understood fact that, from the easterly part of Thirteenth avenue out to the waters of the Hudson, the public are at liberty to pass to and fro; that it is the duty of the occupants of the piers and wharves to keep them in repair for the public safety; and that in the event of a failure to do so which results in injury, without the fault of the injured, there will accrue to the injured a right to compensation, it would seem that it was the duty of the defendant to warn the public that the dock and wharves which it was in possession of and repairing constituted an exception to the general rule.

The general rule is as asserted in *Murphy* v. *City of Brooklyn* (*supra*), that an owner has a right to make such use of his premises as he pleases, without being liable for injuries sustained by one who goes upon them.

The principal exception to this rule is where the injured party goes upon the land by the invitation, expressed or implied, of the owner. To this general rule there is a still further exception, of which *Beck* v. *Carter* (68 N. Y. 283) furnishes an illustration. In that case the owner made an excavation upon his own land, but so near the boundary of an alley along which people were accustomed to travel as to render it dangerous to the public. The excavation was only ten feet from the line of the alley, and one dark night the plaintiff, intending to pass over the alley, fell into the excavation and was injured. In that case another fact received consideration by the court, and that was, that some time prior to the accident the excavation had been covered with boards, which for some reason had been removed; it was held that the circumstances imposed a duty upon defendant to protect the excavation, and because of his failure to perform his duty in that respect he became liable for the injuries sustained.

In *Jewhurst* v. *City of Syracuse* (108 N. Y. 303) a judgment was sustained which awarded damages against the city for injuries received by plaintiff outside the limits of the public highway. It was put upon the ground that inasmuch as there was no visible boundary to the line of the street, and its appearance was such as to induce the belief of any one passing, that he was within the line thereof, the injured party might recover if for any reason it was dangerous to travel, and the city had had notice thereof.

In the opinion of the court the case of *Hayden* v. *Attleborough* (7 Gray, 338) was commented on and approved. In that case the limits of the highway were not indicated by any visible object, and there was nothing to inform a person driving thereon, in the evening, that the course he was pursuing was not within the way intended for public travel, and the defendant was held liable for an injury caused to the plaintiff, by being thrown from a wagon out into a cellar, which had been dug two years before, although the cellar was outside of the limits of the road, and the plaintiff at the time of the accident was outside of such limits.

On appeal complaint was unsuccessfully made of the charge of the court, which stated "that if the line of the highway was not indicated by any visible objects, such as fences, banks of earth, or other objects, and if there was nothing to show the plaintiff, in the evening, that the route she was pursuing was not within the way intended for public travel, and if within the general course and direction of the travel, where travelers were accustomed to pass along the said highway, the cellar was so situated within the limits of the highway as to render the traveling there dangerous, or without the limits of the located way, but so near as to render the traveling there dangerous in the condition in which it was at the time of the accident, * * * and there was nothing reasonably to indicate or give notice to travelers of their approach to the cellar until too late, * * *"' then, after proper notice, the town would be liable.

The point determined by the cases cited, as we apprehend it, is that where the property of an individual or corporation is so situated with reference to the public highway, even though it does not form a part of it, as renders it possible that a person using ordinary care and caution may come upon it, and thereby suffer injury because of its dangerous condition, the municipality will be chargeable with the damages resulting.

In *Alger* v. *City of Lowell* (3 Allen, 402) the court said: "The true test, on the contrary, is not whether the dangerous place is outside of the way, or whether some small strip of ground not included in the way must be traversed in reaching the danger, but whether there is such a risk of a traveler, using ordinary care, in passing along the street, being thrown or falling into the dangerous place,

that a railing is requisite to make the way itself safe and convenient." This case was cited with approval in *Hayes* v. *Michigan Central R. R. Co.* (111 U. S. 228).

In the latter case, as in *Jewhurst's* case, the municipality, it is true, were held liable for injuries sustained upon premises adjacent to the highway, but in *Beck* v. *Carter* the owner of the property upon which the pitfall was situated was held liable. In each case liability was predicated on the ground that the situation of the property, and the circumstances surrounding the user of the highway by the public, were such as to make it a duty to employ some reasonable effort to save people from harm. In this case the public were accustomed, and it was their privilege, to use at pleasure Thirteenth avenue and many of the wharves along its highways.

The right to the possession of this particular wharf had become vested in the defendant, it is true, by contract entered into between it and the authorities of the city, but of that fact the public naturally could not have had knowledge.

There was nothing to indicate to the people going upon it that they had not the same right to use it, and could not use it, with the same impunity as any of the other wharves in that vicinity and along that avenue. That being so, within the principle of the authorities already referred to, it was clearly the duty of the defendant to take some precautions to warn the public against coming upon the property.

As the evidence tended to show that the defendant did not take any precautionary steps whatever in that direction the court properly denied the motion for a nonsuit.

Our attention is called to two exceptions taken to the charge of the court, but we shall not discuss them, for, if the views so far expressed are correct, they do not call for a reversal of the judgment.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., concurred.

Judgment affirmed, with costs.