MARIE HUEBNER, as Administratrix, etc., of OTTO HUEB-NER, Deceased, Appellant, *v.* GEORGE L. HAMMOND and HAMBURG AMERIKANISCHE PACKETFAHRT ACTIEN GESELLSCHAFT, Respondents.

*Negligence — injury to a longshoreman, employed on a steamship, while upon a lighter coming alongside the steamship, by falling through a defective grating — neither the steamship company nor the owner of the lighter held to be liable.*

In an action brought against a steamship company and the owner of a lighter to recover damages resulting from the death of the plaintiff's intestate, who was a longshoreman in the employ of the steamship company, it appeared that on the day of the accident, while the crew of the lighter, which had no propelling

power, were engaged in bringing it alongside the steamship, for the purpose of transferring its cargo to th steamship, the decedent's foreman directed him and a number of other longshoremen to assist the crew of the lighter; that while the decedent was walking along the deck of the lighter he stepped upon a grating covering a manhole in the deck; that the grating tilted up edgewise causing the decedent to land astride its upturned edge and to sustain injuries resulting in his death.

The grating, which was set into the frame of the opening and was not fastened thereto in any way, did not fit tightly, there being a play of about one-eighth of an inch all around the grating between it and the frame. There was no evidence that the manhole and its appurtenances were faulty in construction or were different from those used for a like purpose on similar boats or that at the time of the accident any part of such appurtenances was broken or out of repair or that anything had occurred previous to the accident which would indicate that such an accident could possibly happen. The crew of the lighter did not ask for assistance in bringing the lighter alongside the steamship and they could have done so without receiving any assistance.

*Held,* that the complaint was properly dismissed as to both the defendants;

That the steamship company was not bound to inspect the deck of the lighter before allowing the decedent and his fellow-employees to go upon it, and that so far as the steamship company was concerned, the decedent assumed the risk of the danger which he encountered;

That the decedent was upon the lighter, at most, by the implied sufferance or license and not by the invitation, either express or implied, of the owner thereof, who was consequently under no obligation to protect the decedent from injury;

That, even if the owner of the lighter did owe to the decedent a duty to provide him with a reasonably safe place in which to do his work, the owner could not be held liable unless the plaintiff proved that the manhole and its appurtenances were improperly constructed in the first instance or else had become defective and out of repair and that the owner of the lighter had notice of such defects or by the exercise of reasonable care could have discovered them.

LAUGHLIN and O'BRIEN, JJ., dissented from the dismissal of the complaint as to the owner of the lighter.

APPEAL by the plaintiff, Marie Huebner, as administratrix, etc., of Otto Huebner, deceased, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 29th day of January, 1902, upon the dismissal of the complaint by direction of the court after a trial at the New York Trial Term.

This is a statutory action, based upon the statute of New Jersey, (Laws of N. J. of 1848, p. 151, as amd. by Laws of 1897, chap. 58) which is similar to that in this State, to recover for the death of Otto

Huebner, alleged to have been caused by the negligence of the defendants. The decedent was in the employ of the respondent company as a longshoreman, and had worked in that capacity for several years. On the morning of the 8th of May, 1902, the *Patricia*, a steamship owned by the respondent company, was lying at the south side of Pier No. 1, the northermost of three piers on the Hudson river in Hoboken. The decedent and eight or nine other longshoremen had been engaged in transferring a cargo of lead from a lighter or barge to the *Patricia*. The *Excelsior*, a lighter owned by the respondent Hammond, was lying in the same slip or basin along the north side of Pier No. 2, loaded with a cargo of resin to be transferred to and shipped by the *Patricia*. She was awaiting the unloading of the cargo of lead and her cargo was to be unloaded into the *Patricia* at the place occupied by the lead lighter. The *Excelsior* was square at both ends and had no propelling power. The resin was in barrels which lay in tiers upon the deck, covering the entire deck except a space of about eight feet at either end. The crew of the *Excelsior* consisted of only two men, a master or captain and an assistant or mate. As the longshoremen finished unloading the lead, the boss stevedore, also in the employ of the respondent company, ordered the captain of the *Excelsior* " to come alongside next," and ordered the decedent and other longshoremen to remain on the lead lighter, which was being pulled away by lines attached to Pier 2, and go aboard the *Excelsior* for the purpose of aiding the captain and mate in pulling her alongside the *Patricia* and of then unloading the cargo. There was some conflict in the evidence as to the manner in which the *Excelsior* was being pulled over to the *Patricia*, but there was evidence tending to show, and justifying the inference, that one line had been thrown from the bow and another from the stern of the *Excelsior* and made fast to the *Patricia;* that the captain was at one end and the mate at the other, pulling on these lines; that the boss stevedore then called to the captain of the *Patricia* to pull up to the lead lighter and take the stevedores aboard, which he did; that the stevedores came aboard the *Excelsior* at or near the stern or bow; that some of them proceeded to assist in pulling in the bow line, and others, among whom was the decedent, passed to the middle of the *Excelsior ;* that the boss stevedore then further ordered the long-

shoremen to give the captain and mate a hand in bringing the *Excelsior* alongside, and the decedent and others started for the stern, evidently intending to comply with the order. As the decedent stepped down from the barrels to the clear part of the deck he stepped upon a grating covering a manhole in the deck for ventilating purposes, which was about the size of an ordinary coal hole in a sidewalk. The grating tilted up edgewise, letting one foot through and the other foot passing down the other side, the decedent landed astride the upturned edge of the grating, inflicting injuries which caused his death. There was a tight cover for use over the grating at times when it was not necessary to have it open for ventilating purposes, but it was off at the time in question. This was an iron grating the thickness of which does not appear. It rested on an iron flange three-quarters of an inch below the surface of the deck and about half an inch wide. The undisputed evidence showed that the grating was in place at the time the decedent stepped upon it so that it appeared all right, but it was smaller than the frame in which it set. The only direct evidence as to the condition of the grating when in place was the testimony of one witness, who first testified that there was a play of about a quarter of an inch all round it when placed in the center, but he subsequently testified that the entire play was only a quarter of an inch. The grating was not fastened in any manner; and the undisputed evidence is that although in place it did slide and tip up when the decedent stepped upon it. The testimony of the captain and mate indicated that they could have brought the lighter alongside the steamship without any assistance from the longshoremen; but it appears that they were making slow progress, and it would have taken them much longer to do so unassisted. It also appears that they were further aided by having their stern line, which was fast to Pier 2, thrown off by an employee of the respondent company, by direction of the boss stevedore. It was also shown that it was the general custom in such cases for the longshoremen to assist in this manner in bringing the lighters alongside.

*Perry D. Trafford*, for the appellant.

*Frank C. Avery*, for the respondent Hammond.

*Frederick E. Fishel,* for the respondent Hamburg Amerikanische Company.

LAUGHLIN, J. :

It could not be said as matter of law that the decedent was guilty of contributory negligence. That was a question for the jury, and it should have been submitted to the jury if there was evidence tending to show negligence on the part of either of the defendants.

The first question to be considered is whether the decedent's employer owed him any duty the failure to perform which caused or contributed to his death. The appellant contends that the respondent company is liable under the rule requiring the master to exercise reasonable care in providing for his servants a safe place in which to perform their duties, and, manifestly, this is the only ground upon which it could be argued that liability should be predicated, for if the boss stevedore was negligent in giving the order, the master would not be liable. (*Keenan* v. *N. Y., L. E. & W. R. R. Co.,* 145 N. Y. 190.) We are of opinion, however, that the facts do not bring the case within that rule. It was a temporary place of employment at most, and it was not furnished by the employer. The lighter was neither owned nor controlled by the employer. The decedent was as well aware as his master that no inspection had been made by the latter of the condition of the deck of the lighter, before the decedent and the other longshoremen were directed to go aboard. It would be an unreasonable extension of the rule to hold the master liable for a failure to inspect the deck of the lighter before allowing his employees to go aboard for the purpose of performing temporary duty thereon. The facts, we think, bring the case within the doctrine of risks assumed by employees. (*Moy* v. *Ocean Steamship Co.,* 12 Misc. Rep. 375 ; 65 N. Y. St. Repr. 783 ; *Dixon* v. *Western Union Tel. Co.,* 68 Fed. Rep. 630, the doctrine of which was approved by *McGuire* v. *Bell Telephone Co.,* 167 N. Y. 208 ; *Hart* v. *Naumburg,* 123 id. 641.)

The question of whether the respondent Hammond owed a duty to the decedent and was guilty of actionable negligence is not free from doubt. I am of opinion, however, that the decedent was rightfully upon the lighter in the performance of a duty which he

owed to his employer. In view of the custom and of the act of the captain in taking the decedent aboard, he was there by the consent or implied invitation of the owner of the lighter from which arose the duty of reasonable care to see that he sustained no injury from a negligent condition or concealed trap in the deck of the vessel. (*Stastney* v. *Second Ave. R. Co.*, 18 N. Y. Supp. 800; S. & R. Neg. [5th ed.] § 183; Thomp. Neg. [2d ed.] §§ 953, 985; *Wright* v. *London & Northwestern R. Co.*, L. R. 1 Q. B. D. 252; *Street Railway Co.* v. *Bolton*, 43 Ohio St. 224.) Although the decedent was aiding in the performance of a duty which devolved on the owner of the lighter, he was not a mere volunteer for the benefit of the lighter owner only, for his primary object was to expedite his employer's business. The owner of the lighter owed a duty to his employees and to those coming on board the lighter on business by his invitation or consent, express or implied, to use reasonable care to maintain this grating in a safe condition or to warn them of the danger. (*Newall* v. *Bartlett*, 114 N. Y. 399; *Fogarty* v. *Bogart*, 43 App. Div. 430; *Delaney* v. *Penn. R. R. Co.*, 78 Hun, 393; *Griffen* v. *Manice*, 166 N. Y. 188; *Dunn* v. *Durant*, 9 Daly, 389; *Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124.) The evidence being undisputed that it was in place and that it tipped up when stepped upon, would justify a finding that this duty was not performed and that it constituted a trap dangerous to those passing over the deck. (*Patterson* v. *Hochster*, 38 App. Div. 398; *Cheevers* v. *Ocean Steamship Co.*, 26 Misc. Rep. 193; *Dunn* v. *Durant*, 9 Daly, 389; *Lentino* v. *Port Henry Iron Ore Co.*, 71 App. Div. 466; *Bartnik* v. *Erie R. R. Co.*, 36 id. 246.) The relation of master and servant did not exist between the decedent and the owner of the lighter, and the former did not assume the risk of injuries from the negligence of the employee of the latter. (S. & R. Neg., *supra;* Thomp. Neg. [2d ed.] § 985; *Wright* v. *London & Northwestern R. Co.*, *supra;* *Murray* v. *Dwight*, 161 N. Y. 301; *Street Railway Co.* v. *Bolton, supra.*) Moreover, it would seem that the negligence was not the negligence of Hammond's employees, but that of himself in failing to exercise reasonable care in the construction or inspection and repair of this manhole and the grating. The decedent was not informed of the defective condition of the grating, and the same was not open and obvious; therefore, Hammond would not be relieved

of liability even if the decedent were to be regarded as constructively in his employ.

I am of opinion, therefore, that the judgment should be affirmed as to the Hamburg-American Packet Company, with costs, but reversed and a new trial granted as to the respondent Hammond, with costs to appellant to abide the event.

O'BRIEN, J., concurred; VAN BRUNT, P. J., McLAUGHLIN and PATTERSON, JJ., dissented as to the defendant Hammond.

McLAUGHLIN, J.:

I concur with Mr. Justice LAUGHLIN in so far as he holds that the judgment dismissing the complaint against the steamship company should be affirmed, but I dissent from his conclusion that the judgment should be reversed and a new trial ordered as to the defendant Hammond. The facts, so far as they are material to him, are as follows: He was the owner of the lighter _Excelsior_ on which was a cargo of resin which was to be delivered alongside of a ship belonging to the defendant steamship company. The lighter had a crew consisting of two men, employees of Hammond, whose duty it was to bring the lighter alongside of the ship and make it fast. On the 8th of May, 1900, these employees were in the performance of that duty, and the uncontradicted evidence is to the effect that they were able to perform it without any assistance, and that they made no request for assistance from any one. Notwithstanding this fact the intestate and other employees of the steamship company were directed by their foreman to go aboard the lighter and assist in placing her alongside the ship. This was no part of their duty, which consisted in "slinging the barrels" of resin from the lighter, after it had been made fast, upon the ship. In pursuance of this direction the intestate jumped upon the barrels of resin, which were piled on the deck of the lighter, and then jumped from there to the deck, and as he did so he stepped upon an iron grating covering a manhole in the deck, which turned and he came astride of it and was so injured that he died shortly thereafter. There was no dispute between the parties as to the construction or condition of the manhole. It was a round opening in the deck used for ventilating purposes into which was set an iron rim about sixteen inches in diameter, having an iron flange or edge upon its lower

part of something like one-half an inch in width. In the rim was set an iron grating which rested on the flange. It did not fit tightly. There was a play of about one-eighth of an inch all around between the outside edge of the grating and the inside edge of the flange. The grating was not fastened in any way to the rim, but could be lifted out as occasion required. There was also provided an outer iron cover which was not in place when the accident occurred, but just when or by whom it was removed did not appear. There was no evidence to the effect that either the manhole, rim, grating or cover were faulty in construction or that they were different from those used for a like purpose on similar boats. Nor was there any evidence that at the time the accident occurred any part of them was broken or out of repair, or prior to the time the intestate was injured that anything had occurred to indicate that an accident similar to the one which befell the intestate could possibly happen.

This being the situation at the close of plaintiff's case, I am unable to see how the trial court could do otherwise than dismiss the complaint as to the defendant Hammond. *First.* The defendant Hammond owed the intestate no duty. He was not in the employ of Hammond, but of the steamship company, and when he went aboard the lighter he did so, not at the request of Hammond, but solely at the suggestion or by the direction of his employer. He was on the lighter, at most, by the implied sufferance or license of Hammond, and not by his invitation, either express or implied. The lighter, as already said, was manned with sufficient men to place her alongside, preparatory to the resin being taken from her and put on the ship. No assistance was necessary for that purpose, nor was any requested. Nor do I think there was any evidence to go to the jury that it was customary, under such circumstances, for the employees of the steamship company to go on board the lighters when they were being brought alongside. The defendant Hammond, therefore, was under no obligation whatever to protect one against injury who might voluntarily go upon the boat out of curiosity, or to further his own or his master's business. (*Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Sterger* v. *Van Sicklen*, 132 id. 499.)

*Second.* But if it be held that Hammond owed the plaintiff's

intestate a duty to provide him a reasonably safe place to do his work, when directed to go upon the lighter by the steamship company, even then, it seems to me, the plaintiff failed to establish a cause of action. To establish liability on the part of Hammond, the plaintiff was bound to prove that the manhole, rim, grating or cover was, in the first instance, improperly constructed, or else had become defective and out of repair, and that the defendant had notice of such defects, or, by the exercise of reasonable care, could have discovered them. This proposition is elementary, and the citation of authorities is unnecessary. Here there was absolutely no evidence which would have justified a finding that there was any act of omission or commission on the part of Hammond in this respect. It is true the suggestion is made that the grating did not fit tightly in the rim — that there was a space of about one-eighth of an inch all around it — and that this may have been the cause of its tipping, but it seems clear this could not have been the cause if the grating was in place when the intestate jumped and the flange was one-half an inch wide. Nor is it apparent how the outer covering could have had any effect upon its tipping, and, if it could, I do not see how that could be held as a negligent act so far as Hammond is concerned, because it appears that only a short time before the accident occurred this covering was in place, and when it was removed, or by whom, does not appear. The truth is, no one knows, so far as this record shows, just how the accident occurred or what was the cause of it, and to have sent the case to the jury in the condition in which the evidence was at the close of the trial would have been simply to permit them to guess and speculate upon that subject and, possibly, to infer from the fact that an accident had occurred that it was due to some omission of duty on the part of Hammond. This would have been insufficient to have sustained a verdict.

For these reasons I think the judgment should also be affirmed as to the defendant Hammond.

VAN BRUNT, P. J., and PATTERSON, J., concurred; LAUGHLIN and O'BRIEN, JJ., dissented as to defendant Hammond.

Judgment affirmed, with costs.