VERONICA KAFLINE, as Administratrix, etc., of JOSEPH
KAFLINE, Deceased, Respondent, v. BROOKLYN EASTERN
DISTRICT TERMINAL COMPANY, Appellant.

Second Department, December 21, 1917.

Negligence — public wharf, what constitutes — duty of owner of
wharf — liability for injuries to user thereof.

Where a driver of a tow-horse upon defendant's wharf for several years,
with knowledge of its dilapidated and rotten condition, left his work
and wandered to a portion of the wharf which had been fenced off and
marked with signs as dangerous, and leaned on a stringpiece which
gave way resulting in his being drowned, his representatives cannot
recover for his death, as the owner of the wharf owed him no duty.

An agreement by the owner of a wharf that two concerns might unload at
opposite sides of a pier does not make the wharf a public one.

APPEAL by the defendant, Brooklyn Eastern District
Terminal Company, from a judgment of the Supreme Court
in favor of the plaintiff, entered in the office of the clerk of
the county of Kings on the 6th day of December, 1916, upon
the verdict of a jury for $3,000, and also from an order
entered in said clerk's office on the 27th day of November,
1916, denying defendant's motion for a new trial made upon
the minutes.

The action was brought to recover damages for the death
of Joseph Kafline caused by falling from a part of defendant's
wharf between North Eighth and Ninth streets in the borough
of Brooklyn, city of New York.

*Walter L. Glenney* [*Bertrand L. Pettigrew* with him on the
brief], for the appellant.

*Anthony J. Ernest,* for the respondent.

PUTNAM, J.:

The deceased, Joseph Kafline, was in the employ of the
Parkinson Coal and Coke Company to drive or lead a tow-
horse, upon a part of this wharf where coke was being dis-
charged from a scow alongside the south side of this wharf.
This coal company had a discharging berth on the south side
of the wharf. An ice company had a like privilege along

the north side.  The wharf was open, without shed or covering.  It was about 300 feet in length.  The outer end was in a decayed and dilapidated state, so that the timbers there rose and fell with the tide.  Formerly a house for a city fire boat was on the outer end.  Some two months before the accident it had been abandoned as too ruinous for use, and later the building had fallen into the river.

Where this unloading occurred, a fence had crossed this wharf, with a gate in the center, over which was a large sign: " Drivers must not enter or pass this gate."  Whether this sign was up the morning of the accident was disputed.  The north side of the wharf was more decayed  and in the worse condition.   After the firehouse at the outer end had been abandoned, the fence south of the gate was broken down; north of the gate  about eight feet of the fence was standing. The gate was often left open.

Kafline had been working on this wharf for the Parkinson Company for three or four years.  By leading the tow-horse away from the pulley block of the hoist the bucket would be raised and then emptied into carts.  At this time the coal scow was further out. towards the river, because of another vessel being in the inshore berth.  Kafline had been working the horse somewhat to the westward of this fence.  As he stopped work, he was seen to leave the horse, and walk westward along the south side of the wharf out toward the river for about twenty-five feet, when he paused.   Later he walked diagonally out and across the wharf over to the north side, going a distance estimated at seventy-five feet.  As he leaned on a stringpiece it gave way.  He lost his balance and was drowned.  The place where he fell was estimated as about thirty-five feet from where the firehouse had stood.

Defendant's agreement that two concerns might unload at opposite sides of this pier did not make the wharf public. (*Weems Steamboat Co.* v. *People's Co.*, 214 U. S. 345.)  A public wharf is one to which the vessels and the public can resort, either at will or on assignment of a berth by a harbor authority.   It could hardly be held that a wharf owner cannot protect himself by warnings against intruding on the outer end of the structure not in repair.   Here defendant had posted such a notice, and even fenced off this decaying outer end.

This restricted any invitation that decedent might have. (*Downes* v. *Elmira Bridge Co.*, 179 N. Y. 136.) Deceased had full knowledge of the risks of going away from where his work was. He was not only present when the firehouse fell down, but had been personally warned against going upon the outer part of the wharf. Defendant's duty is stated by PARKER, J., as " to take some precautions to warn the public against coming upon the property." (*Delaney* v. *Pennsylvania R. R. Co.*, 78 Hun, 393, 399.)

The question of the precise state of this fence and as to this sign on the morning of the accident seems of little moment, because Kafline for three years had daily familiarity with the wharf, and knew its dilapidated and rotten state. Therefore, when he left his work, and wandered out into the prohibited area, and crossed over and on the more shaky northern side, he intruded upon a place as to which the defendant owed him no duty.

I advise to reverse the judgment and order and to dismiss the complaint, with costs.

JENKS, P. J., STAPLETON and BLACKMAR, JJ., concurred; RICH, J., voted to affirm.

Judgment and order reversed and complaint dismissed, with costs.