## SUPREME COURT.

### The People of the State of New York agt. William H. Macy and another.

*Incumbrance upon pier — Action by the attorney-general for its removal — Foreign commerce.*

Where, in an action to compel the removal from an East river wharf of a building erected by the owner of the wharf for the exclusive benefit of his own business, and without a written license from the department of docks, it appears that the wharf has been used by the public as a highway and for the loading and discharging of sailing vessels engaged in foreign commerce and having a draft of more than eighteen feet of water:

*Held,* that the building is an incumbrance, an interference with the dominant right of the public, and must be removed, and that the attorney-general has the right to bring the action.

*Special Term, August,* 1881.

*W. W. Goodrich,* for plaintiff.

*Willard Bartlett,* for defendants.

VAN VORST, *J.* — This is an action brought by the attorney-general in the name of the people to restrain the further erection and to compel the removal of a shed which has been partly built on pier forty-five East river. The defendant Macy is one of the owners of the pier, and the other defendant is the builder of the shed. The shed is described in the complaint to be a permanent structure of wood and iron and other materials forming a house or shed to inclose and cover the pier for the private convenience of the defendant Macy to facilitate the business of a line of steamships, and so as to obstruct and interfere with the free use of the pier by the public, and to deprive ships and vessels which have used the pier from loading and discharging cargo thereat as heretofore.

In view of the decision of this court in the case of *The People* agt. *Mallory* (2 *N. Y. Sup. Ct. R.,* 76), in which it is distinctly held that the wharves and piers of New York city are, in substance, public highways, not to be incumbered by erections of that character without express legislative sanction, it must be held, under the facts of this case, that the further erection of the shed in question should be enjoined, and that the portion already built should be removed.

This structure is projected and partially completed for the private convenience of the defendants to facilitate their business, and, doubtless, for the protection of property incident to such business, but in so far as it hinders the free use of the pier by the general public it is an unlawful incumbrance. The pier cannot be materially incumbered, or its full use, for purposes connected with navigation by the general public, be interfered with (*Com. of Pilots* agt. *Clark,* 33 *N. Y.,* 265).

The pier is, in substance, in the complaint described as a public pier, and is alleged to have been in use as such for over forty years last past, and to have been used and resorted

to by ships or vessels engaged in commerce in the port of New York, and between that port and other places in this country and Europe. Whatever right the defendants have acquired in any way to the pier is in subordination to the rights of the general public for purposes connected with navigation. At least such rights may not be abridged by the erection of the shed in question.

The plaintiffs refer in general terms, in their complaint, to certain provisions contained in chapter 249 of the Laws of 1875. This whole subject is under the control of the legislature of the state, and its will is supreme. By force of that specific legislation, powers are conferred upon persons owning or leasing a pier, and who are engaged in the business of steam transportation, to erect and maintain sheds on the piers of the city, "provided they shall have obtained from the department of docks of said city a license or authority to erect or maintain the same." The allegations in the complaint in that regard are sufficient to show that the defendant Macy is engaged in the business of steam transportation, and is entitled to the privileges conferred by the act, upon compliance with the *proviso*, unless prohibited by the provisions of section three of the same act.

It has already been decided in this action that the license provided for in section one of the act of 1875 must be in writing, and as the defendants have produced no written license or authority, they are in no position to insist upon holding the erection they have placed upon the pier, under the provisions of that act.

But section three of the same act interposes an important limitation. It provides "that it shall not be lawful to interfere with the free public use, as now enjoyed, of any wharf, pier or bulkhead adjacent thereto, in the navigable water of the East river, in the city of New York, which has been heretofore used for the loading and discharging of sailing vessels regularly employed in foreign commerce, and having a draft of more than eighteen feet of water." The evidence justifies

the conclusion that the pier in question had been so used by vessels, many of them foreign vessels, regularly employed in foreign commerce, having a draft of more than eighteen feet of water. Much evidence was introduced by both parties upon this subject, which I have carefully considered, as well as the able argument of Mr. Bartlett, the defendants' counsel, but I cannot accept the result reached by him — that as to several of the vessels, they were not so " regularly " engaged. The statutory requirement is not that they should be so exclusively employed; and the fact that several of the vessels went also to domestic ports for commercial purposes does not deprive them of the character of vessels " regularly engaged " in foreign commerce.

It may be, as is urged in this connection on the behalf of the defendants, that an action to remove the incumbrance from the pier could be maintained by the department of docks, or by the mayor, aldermen and commonalty of the city of New York. Ordinarily, and properly enough, actions to remove erections and incumbrances from the streets and avenues of the city — and the piers are held to be extensions of the streets — are brought in the name of the municipal corporation, and by its authority, or by such officer or body directly charged by the legislature with a duty in the premises and with authority to act in that direction.

But I cannot accept the defendants' contention that, under the pleadings and evidence, the people cannot maintain this action. In the subject-matter of this controversy, the people at large — the general public — have a direct interest, and the incumbrances in question, under the decisions, are encroachments upon general rights.

To maintain this action, it is sufficient to show that a wrong is done to the people of the state or their rights infringed; for in such case the attorney-general may, in the name of the people, bring an action for appropriate redress in virtue of the right of the prerogative incident to sovereignty. The public piers are more than extensions of streets and avenues.

They reach out into the navigable waters, which are the ways of commerce, to which they are important adjuncts; and all unauthorized acts by which their free and unincumbered use, by those engaged in commerce and navigation and who have a right to approach and use the piers, is permanently hindered, are encroachments upon the rights of the people of the state. A permanent shed, as has been already stated, has been adjudged to be an illegal incumbrance of such a character. And as the defendants do not appear to have any legal right to incumber the pier with such a structure, the action by the people for appropriate relief through its removal is clearly proper.

There must be judgment for the plaintiffs, and the relief asked for granted.