OCEANIC STEAM NAVIGATION COMPANY (Limited), Appellant, *v.* COMPANIA TRANSATLANTICA ESPANOLA, Respondent.

One who, without fault on his own part, has been held legally liable for the negligence of another is entitled to indemnity from the latter, and this, *it seems*, whether contractual relations exist between them or not; and this right of indemnity does not depend upon the fact that the wrongdoer owed to the one charged with the liability a special or particular duty not to be negligent.

Where, therefore, a person has been compelled, by the judgment of a court having jurisdiction, to pay damages caused by the negligence of another, which ought to have been paid by the wrongdoer, he may recover of the latter the amount so paid, unless he was a party to the wrong which caused the damage.

This rule applies to final judgments of the Circuit Courts of the United States; as the same force and effect must be given to them by the courts of this state as are given to the judgments of our own courts; and this, although had the action been brought in a state court the plaintiff therein could not have recovered.

In an action brought to recover damages for alleged negligence, the amount paid by plaintiff pursuant to the judgment of a court having

jurisdiction in an action against him by one injured by the negligence, is proof of the liability in the first action to the plaintiff therein, and the amount thereof, at least where the wrongdoer had notice of the action and an opportunity to defend. But the judgment is not conclusive as to the liability of the latter; this must be established by evidence outside of the record in the first action.

Those in control of a public pier are bound to exercise the same care for the safety of the public and all having occasion to . use the pier as is required of those in control of public streets.

Plaintiff, a foreign corporation, was the lessee of a pier in the city of New York, on which was a freight shed, with sliding doors; it sublet the pier to defendant, who permitted a boat not belonging to its line to receive its cargo thereon. One C. was engaged in hoisting freight on board said boat; a sliding door which was out of repair fell upon and injured him C. brought an action in the United States Circuit Court against plaintiff, alleging negligence in failing to have said door properly secured. Defendant had notice of the action, but failed to defend. It appeared that the door and fastenings were in good repair when plaintiff sublet the pier to defendant. Judgment was recovered against plaintiff, which it paid. *Held,* that an action was maintainable to recover the amount of the judgment, together with the expenses of the defense; that the judgment of the United States Circuit Court determined conclusively the liability and the amount thereof of the plaintiff to C.; but did not determine as between plaintiff and defendant, whether or not defendant was primarily liable; that this must be proved by evidence outside of the record in said court.

*O. S. N. Co.* v. *Co. T. E.* (26 J. & S. 425), reversed.

(Argued June 10, 1892; decided October 1. 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 1, 1890, which denied plaintiff's motion for a new trial, overruled its exceptions ordered to be heard in the first instance at General Term and dismissed its complaint.

The plaintiff is a British corporation engaged in running the White Star Line of steamships, and the defendant is a Spanish corporation. The department of docks of the city of New York, by an instrument in writing, for convenience called a lease "granted," for a period which included the years 1886 and 1887, to the plaintiff: " All and singular the wharfage which may arise, accrue or become due for the use and occu-

pation, by vessels of more than five tons burthen, of all that certain wharf property situated on the North river, in the city of New York, and known as Nos. 44 and 45, together with · the bulkheads between them."

The instrument contains the following provisions: "And the said parties of the first part hereby authorize the said party of the second part to enter upon the said premises and take possession of the same, at the time herein designated and for the purpose herein set forth, and to hold and enjoy the same, subject, however, to all ordinances of the mayor, aldermen and commonalty of the city of New York, now in force, or which may hereafter be adopted by the said mayor, aldermen and commonalty of the city of New York, and all laws of the state of New York, which are now in force or which may be hereafter enacted in any way appertaining or relating thereto　＊　＊　＊. " And the said party of the second part for itself, its successors and assigns, agrees to erect on each of said piers, Nos. 44 and 45, under the supervision of the said department of docks and in conformity with the fire laws of the city of New York, and in accordance with plans to be filed in and approved by said department, suitable sheds for the protection of merchandise and freight." Pier 45 was used by and was generally sufficient for the White Star Line, and No. 44 was, from time to time, let for the use of other lines and vessels. Pier 44 was about five hundred feet long and extended from the shore westerly into the river. It was covered by a shed used for the protection of freight received for outgoing and discharged from incoming vessels. On the sides of the shed were several sliding double doors, each being about six feet wide and about eight feet high, so that when they were opened a vessel lying alongside could be laden or unladen from the pier.

During the season of river navigation in 1886 pier 44 was used by the Troy Steamboat Company, but at the close of the season for navigation on the Hudson river in December of that year, the plaintiff sublet it for $250 per week to the defendant, until such date in the spring of 1887 as navigation on the Hudson river should be resumed.

While in possession of this pier the defendant permitted vessels owned by other persons to receive and discharge their cargoes thereat for such compensation as was agreed upon, not exceeding the rates fixed by statute. January 17, 1887, the "Louis Baker" was permitted by the defendant to receive its cargo at this pier. John Cleary was employed by the stevedore who was engaged in loading the vessel, and while he was engaged in hoisting freight on board, a sliding door, which was about 200 feet out from the shore, fell upon him and broke his right leg. Subsequently Cleary brought an action in the United States Circuit Court against the Oceanic Steam Navigation Co. alleging that it was the lessee of pier 44, had possession and control thereof on the 17th of January, 1887, and that the door fell upon the plaintiff Cleary "by reason of the carelessness and negligence of the defendant in failing and omitting to have said door properly secured, without any fault or carelessness on the plaintiff's part." Negligence was denied in the answer, and it was alleged that at the time of the accident the pier was in the possession of a sub-lessee. The Spanish corporation had notice of Cleary's action, but did not defend it. It was defended, however, by the British corporation, but a judgment was recovered against it for $2,084.05 damages and costs. A motion for a new trial was made, but was denied, and as the amount of the judgment was not sufficient to authorize an appeal to the Supreme Court of the United States, it was final and had to be paid. In conducting the defense $784.12 was necessarily expended, and this action is brought to recover those two sums, with interest.

*Laurence Godkin* for appellant.

*James S. Stearns* for respondent.

FOLLETT, Ch. J. Had Cleary's judgment been recovered in a court in this state and affirmed by a court of last resort, the right of the Oceanic Steam Navigation Company (assuming that its negligence did not contribute to the accident) to recover the sums it had been compelled to pay by the judgment would hardly be questioned. There are many reported

cases of recoveries of sums which persons have been compelled by judgments to pay for the neglects of others, and the general rule is that there may be a recovery had in such cases unless the parties concurred in the wrong which caused the damages. (*Rochester* v. *Montgomery,* 72 N. Y. 67 ; *Village of Port Jervis* v. *First Nat. Bank,* 96 id. 550 ; *Chicago City* v. *Robbins,* 2 Black. 418 ; *S. C.,* 4 Wall. 657 ; *Lowell* v. *Boston & Lowell R. R. Co.,* 22 Pick. 24.)

The foregoing cases were brought by cities to recover sums which they had been compelled to pay to travelers on the streets for injuries caused by the negligent conduct of the defendants. In those cases the liability of the defendants to indemnify the municipalities is not placed, on the ground that persons causing injuries in highways owe a higher or different duty to the public or to a city than to individuals, nor upon the ground that the liability over is peculiar to neglects to use due care in public streets. The same duty to exercise care for the safety of the public and all having occasion to use piers would seem to be due from those in control of public piers as from those using a public street, for both are public ways. (*Radway* v. *Briggs,* 37 N. Y. 256 ; *Taylor* v. *Atlantic M. Ins. Co.,* id. 275 ; *In re N. Y. C. & H. R. R. R. Co.,* 77 id. 257 ; *Taylor* v. *Mayor, etc.,* 4 E. D. Smith, 559 ; *Mayor, etc.,* v. *Rice,* Id. 604 ; *People* v. *B. & O. R. R. Co.,* 50 Hun, 192 ; *S. C.,* 117 N. Y. 152–157 ; *People* v. *Mallory,* 46 How. Pr. 281–283 ; *S. C.,* 2 T. & C. 76 ; *People* v. *Macy,* 62 How. Pr. 65 ; *Gluck* v. *Ridgewood Ice Co.,* 31 N. Y. S. R. 99.)

In *Gray* v. *Boston Gas Light Co.* (114 Mass. 149), the defendant fastened a telegraph wire to the plaintiff's chimney without having obtained permission. The weight of the wire pulled the chimney into the street injuring a traveler who began an action to recover his damages against the owner of the building. Notice of the suit was given to the gas-light company but it refused to defend. Subsequently, Gray, the owner of the building, paid the traveler $335 for his damages and in settlement of the action, and then sued the gas-

light company to recover that sum and the expenses of the litigation. It was held, the sum paid in settlement having been found to be reasonable, that it and the expenses of the action could be recovered. The court in discussing the question said: "When two parties acting together, commit an illegal or wrongful act, the party who is held responsible for the act cannot have indemnity or contribution from the other, because both are equally culpable or *particeps criminis,* and the damage results from their joint offense. This rule does not apply when one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage. He may recover from the party whose wrongful act has thus exposed him. In such cases the parties are not *in pari delicto* as to each other, though as to third persons either may be held liable."

In *Churchill* v. *Holt* (127 Mass. 165), a judgment had been recovered against the occupant of a building for damages sustained by a traveler who had fallen through a hatchway in a sidewalk. The owner paid the judgment and sought to recover the amount of it from Holt, alleging that his servant, in the course of his business, opened and negligently left the hatchway uncovered and so caused the accident. On the trial the evidence to prove this allegation was rejected but it was held on review that it was competent. It was said: "The rule that one of two joint tort feasors cannot maintain an action against the other for indemnity or contribution, does not apply to a case when one does the act or creates the nuisance and the other does not join therein but is thereby exposed to liability. In such case the parties are not *in pari delicto* as to each other though as to third persons either may be held liable."

In that case, as in the one at bar, the defendant took the position that the judgment in favor of the traveler against the owner was conclusive against his right to maintain the action. This position was not sustained, and in discussing the question the court said: "Under the pleadings in that suit the judgment may have been rendered upon the ground that the plaintiffs were liable as occupants of the building, without any

regard to the question whether they or a stranger to the suit removed the cover or negligently left it unguarded. It conclusively shows that they were guilty of negligence *in law* as to the person injured, but it does not show that they were *particeps criminis* with the defendants, and is not inconsistent with their right to maintain this action." This case was retried and the jury found that the parties were joint tort feasors and the plaintiff was defeated. (131 Mass. 67.) The principle was again asserted in *Simpson* v. *Mercer* (144 Mass. 413); *Old Colony R. R. Co.* v. *Slavens* (148 id. 363).

In *City of Brooklyn* v. *Brooklyn City R. R. Co.* (47 N. Y. 475, 487), the rule of liability was thus stated: "When the parties are not equally criminal, the principal delinquent may be held responsible to a co-delinquent for damage paid by reason of the offense in which both were concerned in different degrees as perpetrators." This was said in an action founded upon a covenant to keep the street upon which the accident occurred in repair, but reference was made to *City of Lowell* v. *Boston & Lowell R. R. Co.*, *supra*, a leading case, laying down the rule that where one has been compelled by a judgment to pay the damages occasioned by another's negligence, the amount paid may be recovered against the principal wrongdoer, though contractual relations do not exist between the parties to either action. (See also Bishop's Non-Contract Law, § 535.)

When damages have been recovered by a judgment against a master for injuries sustained by a servant's negligence, the master not having contributed, the sum so paid by the latter may be recovered from the servant. (*Smith* v. *Foran*, 43 Conn. 244; *Grand Trunk R. R. Co.* v. *Latham*, 63 Maine, 177; *Green* v. *New River Co.*, 4 T. R. 589; *Pritchard* v. *Hitchcock*, 6 M. & G. 154; Smith's M. & S. 134; 2 Thomp. Neg. 1061; Whart. Neg. § 246.)

Sufficient cases have been cited to show that one who has been held legally liable for the personal neglect of another is entitled to indemnity from the latter, no matter whether contractual relations existed between them or not, and that the

right to indemnity does not depend upon the fact that the defendant owed the plaintiff a special or particular legal duty not to be negligent. The right to indemnity stands upon the principle that every one is responsible for the consequences of his own negligence, and if another person has been compelled (by the judgment of a court having jurisdiction) to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.

For the purpose of this discussion it will be assumed that had Cleary brought his action against the Oceanic Steam Navigation Co. in the courts of this state, he would have failed. This brings us to the question of the effect of the judgment of the Circuit Court of the United States. These companies are foreign corporations, and Cleary was a resident citizen of this state, which gave the Circuit Court jurisdiction of the action. (U. S. Const., art. 3, § 2.) The courts of this state also had jurisdiction to determine the controversy between Cleary and the Oceanic Steam Navigation Co. In other words, the Circuit Court of the United States and the courts of this state had concurrent jurisdiction to determine whether this corporation was liable to Cleary by reason of the accident, and the adjudication of either court would have been conclusive upon the other. The judgment of the Circuit Court of the United States must be given the same force and effect by the courts of this state as we give to the judgments of our own courts. (*Crescent City Live Stock Co.* v. *Butcher's Union*, 120 U. S. 141; 2 Black. Judgt. § 938.)

In the case cited, the court said: " And their (the judges of the Circuit Court) judgment or decree when rendered is binding and perfect between the parties until reversed, without regard to any adverse opinion or judgment of any other court of merely concurrent jurisdiction. Its integrity, its validity and its effect are complete in all respects between all parties in every suit and in every forum where it is legitimately produced as the foundation of an action, or of a defense, either by plea or in proof, as it would be in any other circumstances. While it remains in force, it determines the rights of the

parties between themselves, and may be carried into execution in due course of law to its full extent, furnishing a complete protection to all who act in compliance with its mandate."

What effect would the courts of this state give to a judgment rendered by one of them for damages arising from negligence, in an action brought to recover the amount paid pursuant to the judgment?

The defendant in the action would not be bound by the judgment as a party, for he was not a defendant in the first action, but had he been joined as a defendant and both had been adjudged liable, the judgment would not necessarily have determined, as between them, whether either was or was not primarily liable, because that question could not have been litigated in the first action, at least it could not have been without the consent of all the parties to it, and of the trial court, and then only through the aid of a special verdict or of a special finding. The judgment in an action first brought is proof in the second action of the liability and the amount thereof, of the defendant in the first action, to the plaintiff therein. The liability of the defendant in the second action, to the defendant in the first (the plaintiff in the second), must be established by evidence outside of the record of the first action. Such would have been the conceded effect of Cleary's judgment had it been recovered in a court of this state. In the case at bar, the judgment of the Circuit Court is not conclusive evidence of the liability of the defendant to the plaintiff, nor would it have been, had both been defendants in that judgment. But until it is impeached as fraudulent, or as rendered by a court without jurisdiction, it is proof that the plaintiff in this action was legally liable to Cleary for the damages occasioned by the accident, and of the amount of that liability. When we give the judgment of the Circuit Court that effect, we give it the same force and effect as we give to a judgment of our own courts. When the plaintiff had shown that he gave due notice of the pendency of the first action, that he had contested it so far as he could and had finally paid the judgment rendered, he had shown the

amount of the damages which he had sustained, aside from the expenses incurred in its defense. Whether as between these litigants, the defendant is primarily liable for the damages occasioned by the injury to Cleary, must be determined by evidence outside of the record in the United States Circuit Court.

The record of the first action, when put in evidence in the second action by a plaintiff, might disclose a state of facts showing that he was solely liable for the injury, or that the defendant in the second action was not liable over to him, but such facts do not appear from the record in Cleary's case, and the report of the reasons for the denial of the motion for a new trial shows that the Circuit Court did not rest its judgment on the theory that such facts were established. The court said : " There was sufficient in the evidence to warrant the jury in finding that the door or its fastenings was in a condition of disrepair for a period long enough to justify the imputation of negligence. The fact, which was quite clearly shown, that the door and fastening were in good repair when the defendant assigned to the Spanish-American Company the right to collect wharfage and cranage at the pier, did not relieve the defendant from its duty to keep the wharf in safe condition." (40 Fed. Rep. 908.)

Whether the courts of a state have given the same force and effect to a judgment of a federal court that they do to that of their own, is a question which may be reviewed by the Supreme Court of the United States. (*Crescent City Live Stock Co.* v. *Butchers' Union, supra.*)

The fact that certain classes of litigants in the United States are subject to two judicial systems, the courts of which sometimes differ in their views of the rights and liabilities of persons, without having in most cases, an ultimate arbiter to decide as between them, is at least a peculiarity arising from our dual form of government, which will become more and more apparent as time goes on and experience is acquired.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.