HOADLEY et al. v. DUMOIS et al.

(Superior Court of New York City, General Term.    January 7, 1895.)

1. ASSUMPSIT—MONEY PAID OUT AND EXPENDED.
     Where a consignee was compelled to pay money due to the owners of the ship from the charterer on account of the hire of the ship, for which the owners had a lien on the cargo, the amount so paid may be recovered, as money paid for the charterer's use.

2. EVIDENCE—PRESUMPTIONS—PAYMENT OF DEBTS.
     In an action by a consignee against the charterer of a ship to recover money which plaintiff was compelled to pay to the owners of the ship on account of the ship hire, for which the owners had a lien on the cargo, plaintiff need not prove payment of freight to the charterer, as a person is presumed to have paid his debts.

Appeal from jury term.

Action by Russell M. Hoadley and Chester C. Munroe against Hipolito Dumois and F. Simon Dumois. From a judgment entered on a verdict in favor of plaintiffs, defendants appeal. Affirmed.

Argued before FREEDMAN and McADAM, JJ.

Goodrich, Deady & Goodrich, for appellants.
Wheeler, Cortis & Godkin, for respondents.

McADAM, J.    There was no dispute as to the facts, which are substantially as follows:    On August 5, 1890, the owners of the steamship Albert Dumois chartered her, for a period of three years, to the defendants.    On August 21, 1891, within the life of the first charter, the defendants chartered the steamship to the Honduras & Central American Steamship Company for two voyages from Belize, Central America, to New York.    In October, 1891, the Honduras Steamship Company loaded the steamer, and issued bills of lading for the cargo upon one of these voyages, the vessel arriving in New York November 10, 1891.    A portion of the cargo, consisting of coffee, hides, etc., was consigned to the plaintiffs.    The bills of lading were signed by the company in the usual form, and provided for the delivery of cargo to the plaintiffs on payment of the freight.    Both of the charters contained the following clause:

"The owner shall have a lien upon all cargoes and all subfreights for any amounts due under this charter, and the charterer shall have a lien upon the ship for all moneys paid in advance, and not earned."

The master of the steamship refused to deliver the merchandise to the plaintiffs until he should be paid $1,433.53, which he claimed was due to the owners from the charterers of the steamer, and threatened that if the sum was not paid he would file a libel against the cargo to enforce the lien of the vessel and owners thereon.    The

master, although appointed by the owners, was, by the terms of the subcharter, to be under the orders and directions of the subcharterers. On November 18, 1891, a libel was filed by the master against the said merchandise. The goods were bonded by the plaintiffs, and on April 5, 1893, a judgment was rendered by the United States district court in the suit for $1,652.95. The defendants had notice of the litigation, and were afforded an opportunity to defend plaintiffs therein, but took no part in such defense. The reasonable value of the services rendered in the legal proceedings, together with disbursements incurred in the defense of the suit, amounted to $338.74, and this sum was paid by the plaintiffs. The judgment roll in the admiralty proceeding was put in evidence, from which it appeared that the master had filed the libel before referred to; that the plaintiffs intervened, claimed the cargo, and gave security for the same, and costs of the suit; that they put in an answer denying that the ship had any lien upon the merchandise for the unpaid balance of the charter money; that a decree was rendered in favor of the libelants for $1,652.95, which condemned the cargo and the claimants to pay the same; and that the plaintiffs paid the amount of the decree. Of all of which the defendants had notice.

It is clear that the plaintiffs owed nothing to the defendants, and were under no contractual obligation to them. Yet by force of process of law, and the circumstances related, they were compelled to pay a debt of the defendants in order to obtain their cargo. Undoubtedly, where the plaintiff shows that he, either by compulsion of law, or to relieve himself from liability, or to save himself from damage, has paid money which the defendant ought to have paid, the count for money paid to and for the defendant's use will be supported. 2 Greenl. Ev. § 114. This rule has been applied in a great variety of cases. In Wells v. Porter, 7 Wend. 119, plaintiff, to redeem his property from a distress for rent, paid rent for which defendants were liable. Held, that plaintiff could recover the money thus paid. In Lageman v. Kloppenburg, 2 E. D. Smith, 126, the court said that the same rule had been frequently applied to payments by an undertenant of rent, or other charges due to the superior landlord. Grissell v. Robinson, 3 Bing. N. C. 10, applied the same rule to the payment by plaintiff of an attorney's bill for which defendant was liable. In Massachusetts the rule has been applied in mechanic's lien cases, where the owner of property has been compelled to pay liens upon it, for which a contractor was liable to parties furnishing material and labor. Hale v. Huse, 10 Gray, 99; Nichols v. Bucknam, 117 Mass. 488. In the case last cited the court say (page 491):

"The plaintiff, in order to save his property from being sold on legal process, has been compelled to pay a debt which was really due from the defendant. Under such circumstances, the law implies request on the defendant's part, and a promise to repay, and the plaintiff has the same right of action as if he had paid the money at defendant's express request."

See, also, Exall v. Partridge, 8 Term R. 308.

And the same principle has been applied in Dodge v. Zimmer, 110 N. Y. 43, 17 N. E. 399; Vermont Cent. R. Co. v. Vermont & C. R. Co.

(Vt.) 21 Atl. 262; San Gabriel Valley Land & Water Co. v. Witmer Bros. Co. (Cal.) 29 Pac. 500; and Bank v. Smiley, 27 Me. 225. A somewhat similar rule prevails where a party, in order to obtain his goods, is obliged to pay more than is due upon them, in which case recoveries are allowed on the theor. of duress of goods. Briggs v. Boyd, 56 N. Y. 289; 4 Wait, Act. & Def. 488; Cow. Treat. § 307, subsec. 6; Id. § 313; 6 Am. & Eng. Enc. Law, 60, 74.

No contractual relation is necessary as a foundation for the action. It is because there is no express contract that the law raises an implied promise to pay the amount of the claim. Even in actions to recover money which a plaintiff has been obliged to pay to make good an injury caused by defendant's negligence, the right of recovery is sustained, though there be no contractual relation between the parties. Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. 461, 467, 31 N. E. 987; City of Rochester v. Montgomery, 72 N. Y. 65; Village of Port Jervis v. National Bank, 96 N. Y. 550; Trustees v. Foster (Sup.) 30 N. Y. Supp. 686; City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937. Upon the theory of these cases, the plaintiffs became subrogated to the cause of action which the owners of the vessel originally had against the defendants, as charterers. City of Rochester v. Campbell, supra.

The judgment in the admiralty court proves that the steamship had a lien upon the cargo laden on board, for the unpaid balance of charter hire due from the defendants. The defendants had notice of that suit, and an opportunity to defend, and if they had any defense they should have set it up in that case. Where one stands in the position of indemnitor to others, who are also immediately liable to a third party, the indemnitor's liability may be fixed and determined in the action brought against his indemnitee, by notice of the pendency of such action, and an opportunity afforded him to defend it. Village of Port Jervis v. National Bank, 96 N. Y. 550, 557; City of Rochester v. Montgomery, 72 N. Y. 65; City of Chicago v. Robbins, 2 Black, 418; Seneca Falls v. Zalinski, 8 Hun, 571.

The appellants urge that they could not have set up a defense in the suit against the cargo, because, in admiralty, a counterclaim cannot be pleaded. But any person interested in the subject-matter of the suit, who has a counterclaim against the libelant, can file a cross bill. This is strictly analogous to the cross bill under the old equity practice, and the court makes a final decree upon both.

The defendants also urge that there is no evidence in the case showing that the plaintiffs paid the freight due from them to the Honduras & Central American Steamship Company. But the law will presume, in the absence of proof to the contrary, that this freight was paid, and presumption is proof. The law presumes that every person is solvent, pays his just debts and obligations, and performs all his contracts, and the burden of negativing this presumption is on him who alleges the contrary. Thus, if the Honduras & Central American Steamship Company had brought an action for the freight, they could have recovered only on an allegation of breach, i. e. nonpayment, which would have to be affirmatively alleged. Lent v. Railway Co., 130 N. Y. 504, 29 N. E. 988.

Assuming, therefore, as we must, that the plaintiffs have paid the entire freight moneys to the Honduras & Central American Steamship Company, as called for by the bills of lading, the plaintiffs either have a remedy against the defendants for the debt of theirs, which plaintiffs were forced, by operation of law and the circumstances of the case, to pay, or we have the inequitable result that the defendants, without any voluntary act of the plaintiffs, and' against their will, have obtained the benefit of $1,438.53 of their money. The plaintiffs have a legal right to recover from the defendants the amount paid, including the costs of defense to which the plaintiffs were put by the defendants' default. Dubois v. Hermance, 56 N. Y. 673; Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. 461, 31 N. E. 987. The action is founded on equitable principles, somewhat upon the theory which holds that money in the hands of one person, to which another is equitably entitled ex aequo et bono, may be recovered in a common-law action for money had and received. Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606; Chapman v. Forbes, 123 N. Y. 532, 26 N. E. 3. And this principle seems to pervade all the cases. The direction to find for the plaintiffs was right, and the judgment appealed from must be affirmed, with costs.