A proper order to that effect may also be entered.

Ordered accordingly.

---

THE HUDSON RIVER TELEPHONE COMPANY, Respondent, *v.* THE ÆTNA LIFE INSURANCE COMPANY, Appellant.

(County Court, Albany County, February, 1910.)

Insurance — Extent of loss — Life and accident insurance — Expenses of litigation.

> Where an insurance company insures a telephone company against accidents, by a policy which provides that the assured shall give immediate notice of accidents, with full particulars, and, if a suit is brought, immediately forward to the insurance company all papers, and that the insurance company will, " at its own cost,

defend such proceeding in the name and on behalf of the assured or settle the same unless it shall elect to pay to the assured the indemnity provided" in the policy; that the assured shall not settle any claims, except at its own cost, nor incur expenses, nor interfere in negotiations for settlement or legal proceedings without the consent of the insurer; and where, after the happening of an accident, the attorneys for the insurance company, defending an action against the telephone company for damages for personal injuries sustained by one of its employees, against which it was insured, employed an expert witness, the insurance company is liable for his compensation, although he is actually sworn on the trial by the plaintiff; and where the witness thereafter sues the telephone company for his compensation, which notifies the insurance company and defends the suit, which results in a judgment against it, the insurance company is liable for the amount of such judgment and the expenses incurred by the telephone company in the defence of the latter suit.

APPEAL from a judgment of the City Court of Albany in favor of plaintiff.

Countryman, Nellis & DuBois, for appellant.

John A. Delehanty, for respondent.

ADDINGTON, J. The defendant appeals from a judgment of the City Court of Albany, in favor of plaintiff, for $714.48 damages and $17 costs, amounting in all to $731.48.

The plaintiff in this action is a domestic telephone corporation, duly incorporated, organized, and existing by virtue and pursuant to the laws of the State of New York.

The defendant is a foreign insurance corporation, incorporated under the laws of the State of Connecticut, duly authorized to conduct its business of insurance and indemnification from liability in the State of New York.

On the 15th day of March, 1905, the defendant issued its certain " liability policy," by which it agreed to indemnify the plaintiff, the Hudson River Telephone Company, " against loss from common law or statutory liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered within the period of this policy by any employee or employees of the assured while on duty at the place and in the occupations mentioned in the schedule

hereinafter given in and during the continuance of the work described in said schedule."

There are certain " general agreements " which are made part of the policy, and among these agreements are the following:

" 1. The assured, upon the occurrence of an accident, shall give immediate written notice thereof, with the fullest information obtainable at the time, to the home office of the company at Hartford, Connecticut, or to its duly authorized local agent. He shall give like notice with full particulars of any claim that may be made on account of such accident, and shall at all times render to the company all co-operation and assistance in his power.

" 2. If, thereafter, any suit is brought against the insured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the company every summons or other policy as soon as the same shall be served on him, and the company will at its own cost defend against such proceeding in the name and on behalf of the assured, or settle the same, unless it shall elect to pay to the assured the indemnity provided in clause A of the special agreement as limited therein.

" 3. The assured shall not settle any claim except at his or its own cost, nor incur any expense, nor interfere in any negotiation for settlement, or in any legal proceeding, without the consent of the company previously given in writing; but he may provide at the time of the accident such immediate surgical relief as is imperative. The assured when requested by the company shall aid in procuring information, evidence, and the attendance of witnesses and in effecting settlements and in presenting appeals."

In January, 1906, one George M. LaDuke, an employee of plaintiff, commenced an action against the plaintiff for damages on account of an injury received by him in the course of his employment by plaintiff.

In accordance with said indemnity policy, and of No. 2 of the said " general agreements," the plaintiff herein forwarded to the defendant the summons and complaint in the action, and received the following reply:

County Court, Albany County, February, 1910.     [Vol. 66.

"SYRACUSE, N. Y., *Feb.* 19, 1906.

"B. E. Watson, Manager for Central and Eastern New York, 941–944 Onondaga County Savings Bank building, Syracuse, N. Y.," etc.

"Re 1405 LaDuke-Hudson River Telephone Company."

"HUDSON RIVER TELEPHONE CO.

"Albany, N. Y.:

"GENTLEMEN.— We have yours of the 15th, enclosing summons and complaint in the above case and same has been turned over to our attorney, T. B. Watson, Plattsburgh, N. Y., who will give the case all necessary attention.

"Yours truly,
"B. E. WATSON,
"*Manager.*"

It was conceded that a letter was sent by Woods, Conway & Cotter through the post-office, and delivered to Dr. Moriarta, at Saratoga Springs, and that this letter reads as follows:

"DR. D. C. MORIARTA, *Saratoga Springs, N. Y.:*

"DEAR SIR.— You will remember our Mr. Cotter called on you last spring, in reference to George LaDuke, a lineman of the Hudson River Telephone Co., who was injured on West Harrison street, of your city, in June, 1905.

"The case will, we expect, come up for trial on Tuesday, November 13th, at Elizabethtown, Essex county, when we shall need you as a witness, as you treated him, and should know more of the extent of his injuries and their effect on his usefulness in after life than possibly any other man.

"We have sent some subpœnas to Saratoga for service, but while your subpœna reads to be at Elizabethtown at 9 o'clock on Tuesday, which would necessitate your coming up the night before, we will wire you early on Monday, if not before, whether this will be necessary, and, unless you hear from us to the contrary, you need not leave Saratoga until

8:15 train Tuesday morning, which will get you to Elizabeth-
town about 1 o'clock, the time for the afternoon session.

"Please fortify yourself as to any data that may enable
you to speak as clearly as possible regarding the young man's
injuries.

"Yours very truly,
"WEEDS, CONWAY & COTTER."

Subsequently Dr. Moriarta sent a bill for $250 to the
Hudson River Telephone Company for his services as a wit-
ness in the case of LaDuke against the telephone company,
which bill was sent by the attorney for the said company to
the defendant insurance company, and after some correspond-
ence between the attorney for the telephone company and the
attorneys for the insurance company, and the insurance com-
pany, said witness, Dr. Moriarta, brought an action in the
Supreme Court, Saratoga county, against the telephone com-
pany to recover for his services.

The defendant company was informed of said action, and
the summons and complaint was sent to it with a request to
defend. The case was tried, and judgment obtained against
the telephone company for $267.62, and $83.43 costs. The
insurance company was advised of this judgment, and in-
formed of the time to appeal, etc. In fact the defendant in-
surance company was informed of every step taken in said
action, until the time to appeal had expired, whereupon the
plaintiff paid said judgment, and also paid to its attorney,
John A. Delehanty, $361.40, his charge for defending said
action. The telephone company, by letter to the insurance
company, demanded that the insurance company reimburse
it for this sum of money, amounting in all to the sum of
$714.48, and that, unless payment was made, action would be
brought by it for the recovery of the same.

In all the correspondence, the defendant insurance com-
pany denied any liability on its part, and refused to defend
the action of Dr. Moriarta, or to do anything in the prem-
ises because of this action.

Paragraph F of the "special agreement" of said
"liability policy" reads as follows:

"F. In any matter relating to this insurance, no person

unless duly authorized in writing shall be deemed the agent of this company."

Under this " special agreement " it is claimed by the defendant that it does not appear in this action that Mr. T. B. Cotter, or Woods, Conway & Cotter, had written authority to represent it in the LaDuke action, and hence plaintiff cannot recover, and that, as no written authority to the attorneys appears, they were mere " butters in " and voluntary attorneys in the action. This cannot possibly be tenable. From the time of the accident up to the dispute as to the claim in question, each party complied very particularly and studiously with the very letter of the terms of the " liability policy."

The telephone company sent to the defendant insurance company the summons and complaint in the LaDuke action; and, as appears above, the manager of the defendant acknowledged to the telephone company the receipt of the papers, and that they were turned over to " our attorney, T. B. Cotter, Plattsburgh, N. Y.," and it appears that Cotter conferred with Dr. Moriarta, and the firm of which he is a member defended the LaDuke action. This is plainly a compliance by the insurance company with said " special agreement F " and it cannot be said that, under these circumstances, the insurance company could successfully defend an action against it by Weeds, Conway & Cotter, for their services as attorneys for the defendant telephone company in the LaDuke action. So that I do not think there is any merit in the contention of the appellant, that it does not appear in this action that Weeds, Conway & Cotter had written authority to act in the LaDuke action.

The important questions in this case are:

1. Did Dr. Moriarta perform services in the LaDuke action for the telephone company, and at the request of the insurance company and its attorneys and,

2. If he did perform such services at such request, is the telephone company entitled to be reimbursed for the judgment Dr. Moriarta obtained against it, and for the expenses it was put to in defending the claim which the insurance company should have paid; for all of which judgment was

rendered in favor of plaintiff, and from which judgment this appeal is taken?

From all the evidence it is clear to me that Dr. Moriarta did perform services in the LaDuke action, and at the request of the attorneys for the insurance company, and that it was the duty of the latter to pay said claim of $250 when it was received by it, after being forwarded to it by the attorney for the telephone company.

Mr. Cotter, one of the attorneys for the insurance company, interviewed the doctor at Saratoga, about the injuries to LaDuke, as appears by the evidence of the doctor in his action against the telephone company, in which the doctor says:

" I told him (meaning Cotter) the facts as they were, and what conditions we would have to meet in the way of defense, and he took some notes and said, ' you will hear from me again.' "    Subsequently, and just before the trial of the LaDuke action, Dr. Moriarta received from Weeds, Conway & Cotter the letter above set forth.

The doctor says he went to Plattsburgh, and while there, and before the trial, had a consultation with Mr. Cotter and a Dr. Hadden, and others; and was spoken to about the case at other times by the attorney for the insurance company.

The following letter was written by T. R. Cotter, on the letter head of Weeds, Conway & Cotter, dated December 20, 1906:

" My Dear Mr. Crocker.— We have your letter of the 19th, enclosing Dr. Moriarta's bill, and assure you that we fully appreciate the manly position the doctor took on the trial, and the services of a very high order he rendered, but I think, as I told you and he at Elizabethtown, that his bill should go to the general manager of the telephone co., who knows all of the terms of the policy existing between the telephone company and the surety company, and let it be dealt with there as the circumstances require, and I, therefore, return the bill to you, and would ask you to dispose of it in that way.

" Wishing you the compliments of the season, I am,

" Very truly yours,

" T. R. Cotter."

T. R. Cotter, the attorney for the insurance company, not only consulted the doctor at Saratoga, and wrote him about the trial, and consulted with him at Plattsburgh, but in the foregoing letter said, " we fully appreciate the manly position the doctor took on the trial, and the services of a very high order he rendered." For whom did he render services of a very high order? Surely the attorney could not have intended that the services " of a very high order " were rendered for plaintiff LaDuke.

While the doctor was sworn for plaintiff LaDuke, and not for the defendant, he was requested to be at the trial by Cotter, and was in consultation with Cotter. From all the evidence it must be apparent that, while the doctor was sworn for plaintiff, he was also in the service of the insurance company in the defense of the LaDuke action, and it was the duty of the appellant under the liability policy to pay him for his services. This defendant is properly charged with the judgment of Dr. Moriarta against this plaintiff, and it is also chargeable with the moneys paid by this plaintiff in defending the action of Dr. Moriarta against it. The plaintiff may, as it did, defend the action of Dr. Moriarta, in order to show that he was not a witness for the defendant in the LaDuke action, or that he did not perform any services for defendant in the said action at its request or the request of this defendant. The defendant was notified of the action; the action was honestly defended, and the charges of the attorney for the defendant (this plaintiff) in defending said action naturally and proximately resulted from the insurer's breach of the agreement to pay the costs (part of which was Dr. Moriarta's claim) of the LaDuke action.

" The damages allowable on express agreements for indemnity will depend on the scope of the undertaking; they can only be such as naturally and proximately proceed from the cause referred to in it." 3 Suth. Dam. 2327, § 762.

" The words ' all costs whatsoever ' to which the officer may be liable, and all the costs which he may be ' obliged by law to pay any person or persons,' include counsel fees reasonably incurred, as do the words binding the sureties to hold the indemnity harmless, as well as other expenses in-

curred by the vendee in protecting the property purchased, the title to which was covered by the bond of indemnity. Where the indemnity was against any loss, cost or damage legally incurred by reason of said suretyship; ' the court said that it seems certain enough that the legal or court costs, including the damages on affirmance of the judgment in the appellate court, are included. These costs and damages are the precise liabilities against paying which the indemnitee provided by obtaining this bond. This cost and expense the indemnitor could have stopped at any time by paying the debt his intestate had bound himself to pay or even by notifying the appellee not to prosecute the appeal unless at his own expense. The general rule seems to be that in cases of this kind all such costs may be recovered when nothing appears to indicate bad faith in making the defense." 3 Suth. Dam. § 762.

" If a demand be sued which the person indemnifying is bound to pay, and notice be given to him and he refuse to defend the action in consequence of which the person to be indemnified is obliged to pay the demand, the other party is stopped after such notice from disputing it or from claiming that the party sued was not bound to pay it." 3 Suth. Dam. § 86; Oceanic Steam Navigation Co. v. Compania Trans. E., 134 N. Y. 461.

" Its effect is " (that is, the notice of the action) " to let in the party who is bound to indemnify to defend the suit against the indemnified party and to preclude the former from showing, when sued for such indemnity, that the plaintiff has no claim for the alleged loss, or not to the amount alleged; that he made an improvident bargain, and that the defendant might have obtained better terms if the opportunity had been give to him.

" In such actions two questions arise: First, has the plaintiff a legal cause of action; second, to what extent has he been damaged?" 1 Suth. Dam. § 86.

As to the effect of the judgment of Moriarta against this plaintiff, Cullen, J., in Cornell v. Travelers' Insurance Co., 175 N. Y. 239, at page 253, says: " The general rule seems to be that where one party either by express contract or by

22

County Court, Albany County, February, 1910.   [Vol. 66.

a rule of law is obliged to indemnify another against some liability, if the party indemnified gives notice to his indemnitor of the institution of an action against him for such liability, the indemnitor is concluded by the recovery of the judgment against the party indemnified."

The insured could have refused to defend the action of LaDuke against the telephone company; and, therefore, take the risk of a judgment being obtained against said company. But, if LaDuke was unsuccessful in his action, the insurer would not be liable for the costs and expenses of the company in successfully defending the LaDuke action.   Cornell v. Travelers' Ins. Co., *supra.*

In the LaDuke case, however, the insurer did defend, and, whether plaintiff was successful or not, having defended it is liable for the costs of such defense under " general agreement No. 2," which is made part of the policy, and wherein it agrees to defend at its own cost.   Having defended and incurred the charges of Dr. Moriarta, and as the " general agreements " are part of the policy, I am of the opinion that the costs which the insured agreed to pay in defending the action relate back to its indemnity " against loss in common law or statutory liability for damages on account of bodily injuries," etc.

Even if the costs mentioned in the " general agreements " are not embraced in the indemnity clause of the policy, the defendant being liable to pay the expense of the doctor, and having had notice of the action of Dr. Moriarta against the defendant, it is bound by the judgment and is legally obligated to pay the same together with the expenses the telephone company was put to in defending said action.   Oceanic Steam Nav. Co. (Ltd.) v. Compania Trans. Espanola, 134 N. Y. 461; Prescott v. LeConte, 83 App. Div. 482; Charmar v. Hibbler, 31 id. 477; Phœnix Bridge Co. v. Creem, 102 id. 354.

The judgment of the City Court of Albany is affirmed, with costs.

*Judgment affirmed, with costs.*