AMERICAN LUMBERMENS MUTUAL CASUALTY COMPANY, Plaintiff, v. PRESTON E. TRASK, Defendant.

Supreme Court, Madison County, December 7, 1932.

*Oscar J. Brown,* for the plaintiff.

*Coville & Santry [William F. Santry* of counsel], for the defendant.

SENN, Official Referee. The facts in this case are not disputed. On February 11, 1931, the defendant was a dealer in Buick automobiles at Hamilton, N. Y. Agnes M. Pilbeam was the owner of a new Buick automobile which she had purchased of the defendant. Defendant borrowed her car for the purpose of demonstrating it to a prospective purchaser. She loaned it to him as an act of accommodation only. While operating it for the purpose stated, the defendant collided with a vehicle in which Albert J. Fowler and Jennie E. Fowler were riding, causing damage to them. Each brought an action in which the defendant herein and Miss Pilbeam were joined as parties defendant. Judgments in a substantial sum were obtained against both defendants; against Trask on the ground of his negligence and against Miss Pilbeam on the ground that Trask was operating her car with her permission. Trask paid one-half of the amount of the judgments and refuses to pay the other half, which this plaintiff, as Miss Pilbeam's insurer, has been compelled to pay.

In the action by Mr. and Mrs. Fowler no negligence on the part of Miss Pilbeam was alleged or proven, nor was Trask her agent or employee, but the judgment against her was solely by reason of the provisions of section 59 of the Vehicle and Traffic Law of the State of New York which made her liable as owner for the negligence of one legally operating her automobile with her permission.

Plaintiff brings this action to recover of the defendant herein the sum of $5,390.65, being the amount it was compelled to pay on said judgments and certain disbursements it incurred in investigating the case and defending the Fowler actions.

In the policy of insurance issued to Miss Pilbeam, insuring her against her legal liability in the operation of her automobile, it was provided that the company shall be subrogated to all rights which the assured may have against any person as respects any payment made under the policy.

The action is on the theory that whereas, as between Miss Pilbeam and Trask, he would be liable to her for the amount of her liability to the Fowlers, and she having discharged that liability by payment made for her by her insurer, the subrogation clause became effective and placed the plaintiff in the situation in which she would have been if she had herself made the payment.

It was the common-law rule and is still the law that where an owner of property, without fault on his part, is required by the

judgment of a court of competent jurisdiction to pay damages caused by the negligence of another, he may recover of the latter the amount so paid. This is a principle of law so obvious and just as to be elementary and to hardly require the citation of authority. Still, it has been so adjudicated by the courts of this State, the leading case being *Oceanic Steam Nav. Co.* v. *Compania Transatlantica Espanola* (134 N. Y. 461).

Defendant's counsel does not dispute that this is the general rule and he, too, cites the *Oceanic Case* (*supra*) as an authority. But it is claimed that by reason of certain statutory enactments contained in article 6-A of the Vehicle and Traffic Law, which is entitled "Financial responsibility for operation of motor vehicles," and by reason of a rider attached to the policy of insurance pursuant to that article, the general rule of law does not apply to this case.

Section 94-b prescribes certain penalties in the way of forfeiture or suspension of licenses to operate motor vehicles, where there are judgments against owners, operators, etc., for damages by reason of the operation of motor vehicles unless and until the person concerned shall have given proof of his ability to respond in damages for future accidents.

One of the ways that this proof may be furnished may be by the written certificate of an insurance carrier, duly authorized to do business in this State, that it has issued to or for the benefit of the person named therein a motor vehicle liability policy, as defined in that article which is in full force and effect. (Vehicle and Traffic Law, § 94-c.)

Section 94-k provides that "motor vehicle liability policy" shall be taken to mean a policy of liability insurance and shall insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the consent, expressed or implied, of such insured against loss from the liability imposed upon such insured by law, or upon such other person, for injury to or death of any person.

It does not appear that at any time while said policy was in force there was any need or request on the part of any one concerned to give the proof or file the certificate provided in sections 94-b and 94-c, nor that the plaintiff ever made or filed such a certificate, but in order to be in a position to furnish it to the assured if and when required, the plaintiff insurer attached to Miss Pilbeam's policy a rider which amended it to insure the named assured and any other person using any motor vehicle described in the policy, with the consent expressed or implied of the assured against loss from the liability imposed upon such assured by law, or upon such other person for injury to or death of any person, etc. In other words, containing the provisions of said section 94-k.

It is claimed for the defendant that this clause, under the circumstances, inured to the benefit and protection of the defendant Trask with like force and effect as though he had been a party to the policy.

While a casual and literal reading of the clause would seem to support the contention, I do not believe that it was so intended, either by the Legislature or the insurer, because if so read and interpreted it would nullify the subrogation clause of the policy.

" In pursuance of the general object of giving effect to the intention of the legislature, the courts are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter." (59 C. J. 964.)

The rule of construction according to the spirit of the law is especially applicable where adherence to the letter would result in absurdity or injustice, or would lead to contradictions or would defeat the plain purpose of the act, or where the provision was inserted through inadvertence. (59 C. J. 967.)

So the meaning of general language may be restrained by the spirit or reason of the statute. (59 C. J. 968.)

The purpose to be furthered by the act (Vehicle and Traffic Law, §§ 94-b, 94-c and 94-k) was to protect the public (*Cohen* v. *Metropolitan Casualty Ins. Co.*, 233 App. Div. 340), and it is probable that it applies only to required policies. (Id.)

The construction contended for by the defendant would make him, equally with Miss Pilbeam, the beneficiary of a contract to which he was, at the time it was made, an entire stranger — a contract in which no benefit to him was contemplated by any one and as to which no consideration moved from him or for him to any one. It would absolve him from all liability to every one, including Miss Pilbeam, who loaned him her car as an act of kindness only. No result so contrary to reason and justice could have been intended either by the Legislature, the insurer or the insured. Rather it was intended to protect and indemnify the public where damages resulted to any one through the carelessness of irresponsible persons, other than the owners, operating automobiles with the owners' consent.

As bearing on this question it should be borne in mind that article 6-A, which includes sections 94 to 94-n of the Vehicle and Traffic Law, is relatively new and deals mostly with suspension of licenses and of certificates of registration of motor vehicles. An entirely new feature of the act is that which provides for such suspension in case of unsatisfied judgments. Its purpose was plainly to encourage the procurement and issuance of automobile liability insurance and to provide an aid to the collection of judgments against owners, operators, etc., who are not financially responsible.

What then was the object of the rider attached to Miss Pilbeam's policy? It was solely for the benefit and protection of Miss Pilbeam and the public and not for the direct benefit of Trask.

Why then, it may be asked, did the insurer undertake to satisfy any judgment against persons in the relation of Trask? I think the answer is this: If the Fowlers had seen fit, as they legally might have done, to sue Trask alone, this entire judgment would have been against him. If he did not pay this judgment, this plaintiff, under its rider, would have to pay it. Not on account of any moral or contractual obligation to Trask, but for the protection of Miss Pilbeam, whose registration certificate as to her automobile involved in the accident would otherwise have to be suspended. That, in my opinion, is the only reason why the omnibus clause was required to be in the rider.

In *Fried* v. *London Guarantee, etc., Co.* (136 Misc. 740) the case was in a sense similar to the one I assumed might exist. That is, there was a judgment against the operator of the car involved in an accident after failure to get judgment in an action against the owner. It was held that the judgment in the action against the owner was not *res adjudicata* in the action against the one who operated the car with the owner's consent.

The court held that the insurer was liable under an omnibus clause similar to the one involved in this action. With this I agree. I do not agree with the *obiter dictum* that the clause inured to the benefit of this unnamed operator of the car with as much force and effect as if he had been named in the policy, although I do agree with all that the learned court held in regard to the questions there involved.

It is argued that plaintiff's claim to subrogation is untenable, in that " so long as the plaintiff carried out the terms of its contract and paid the judgment against Trask, Miss Pilbeam could not be damaged and she was not damaged for that very reason. It is only by repudiating one part of its contract and holding to the subrogation clause of the same contract, that the plaintiff can claim even theoretical damages."

If this is correct reasoning, then all subrogation clauses would be a waste of words. Miss Pilbeam was damaged as soon as Trask's negligence made her liable therefor. This damage the plaintiff repaired by paying that which she would otherwise have had to pay. As stated at the outset, she paid one-half of the judgment by and through the insurance company who paid it for her and so became entitled to the subrogation provided in the policy.

I hold that plaintiff is entitled to the relief demanded in the complaint and have signed findings to that effect.