Foster, J.
The main action herein was commenced by the infant-plaintiff, Rafael Colon, Jr., to recover damages for personal injuries sustained by him at Public School No. 25 in New York City, during the course of renovation work, and by his father for loss of services. Plaintiffs sued the Board of Education of the City of New York, Julius Schulman, and the Julius Schulman Construction Corp. Schulman and Schulman Construction Corp., in turn, commenced third-party actions against Andrew Bedden seeking common-law indemnification. The Board of Education cross-claimed against the Schulman corporation, but that cross complaint was dismissed and is not involved here. At the trial, it was stipulated that for purposes of the main action Schulman and Schulman Construction Corp. would be regarded as one and the same.
At the close of all the evidence, the third-party complaints of Schulman against Bedden were dismissed as a matter of law. The jury then returned substantial verdicts against the defendants named in the main action. On appeal to the Appellate Division, the judgment of the trial court, insofar as it directed a recovery against all of the defendants in the main action and dismissed the cross complaint of the Board of Education, was affirmed unanimously. However, the Appellate Division, by a divided court, reversed on the law and on the facts the dismissal *448 of the third-party complaints of Schulman and ordered a new trial thereupon.
The case, as it comes to us, presents this problem: was the recovery against Schulman predicated upon “passive” negligence only, and was there evidence that appellant Bedden was “ actively ” negligent? If questions of fact exist on these issues, then judgment absolute must now be entered in favor of Schulman on its third-party complaints. A summary of the facts, undisputed in their salient features, and the relevant testimony follows:
On September 18, 1956 Julius Schulman entered into a contract with the Board of Education of the City of New York to renovate certain rooms in Public School No. 25, at 149th Street and Tinton Avenue, in the Borough of The Bronx. The work under the contract subsequently was turned over to Julius Schulman Construction Corp., of which Schulman was the president and sole officer. Work commenced on October 1, 1956, but was suspended temporarily on October 5,1956 because of the default of one of the other contractors on the job. Thus no employees of Schulman were on the job on October 8, 1956.
On October 1, 1956 Schulman had erected a boom in the attic window of the school on the side of the building adjacent to the “ lower ” play yard, in order to facilitate the raising and lowering of work appliances and materials to and from this portion of the building. The principal and custodian engineer of the school were aware that the boom had been constructed in the attic window. They had inspected the boom together and concluded that it was safe “ hanging out ” of the attic window.
When the work under the contract temporarily ceased on October 5,1956, the old floor boards and plaster which previously had been removed from the rooms that were being renovated and the other rubbish resulting from the work remained on the premises. This rubbish was piled in room 200 on the second floor and in room 400 on the fourth floor of the building, on the “ lower ” play-yard side.
On October 8,1956 Mr. Schulman telephoned Andrew Bedden, the “ rubbish removal man ” frequently used by Schulman, and requested that he remove the rubbish from these rooms. Schulman knew that the customary method of removal of planks and debris on jobs of this kind was by use of a boom; that Bedden had *449 used booms on other jobs, and that the boom constructed by Schulman over the play area was available for Bedden’s use. Bedden was instructed to report to the office of the school to apprise the school authorities that the rubbish was about to be removed so that the school schedule could be arranged accordingly. Schulman had promised the school authorities he would furnish such notice. Bedden was not told how or in what manner to perform the work, and was not told specifically that there was a boom in the attic window which could be used to lower the rubbish. Schulman did not tell Bedden to provide any safeguards or precautions if he used the boom, and said nothing about barricading the work areas.
Bedden, accompanied by two men, arrived at the school at approximately 1 o’clock that afternoon. He reported to the office of the school on the ground floor, and, after stating the purpose of his visit, was turned over to the custodian engineer of the school.
The custodian engineer thereafter took Bedden up to room 200 and room 400 and showed him the rubbish that was to be removed. The rooms in which the rubbish was piled had been locked, but the custodian engineer unlocked them for Bedden. After showing Bedden the rubbish that was to be removed, the custodian engineer then went through the building looking for the principal in order to inform him that it was being removed. He was unable to find the principal before the accident resulting in the infant plaintiff’s injury herein occurred.
The principal of the school testified that, if he had known that Bedden was going to use the boom in the attic window to remove the rubbish, he certainly would have excluded the children from the lower schoolyard while the work was in progress. Furthermore, he testified that he previously had issued specific instructions to the custodian engineer that no work was to be done in the school by Schulman or anybody under Schulman until he was notified, and that he should have been notified before Bedden was permitted to commence removing the rubbish from the building.
The accident occurred while Bedden and the two men who were assisting him were removing the rubbish. The infant plaintiff, a boy 10 or 11 years of age, was a pupil in class 4^-2. He was playing in the lower schoolyard with the other members of his class during the afternoon recess period which started *450 around 1:30 p.m. that afternoon. He was spinning a top in the portion of the yard located under the boom in the attic window, when he was struck in the head by a board about 7 feet long and about 3 inches wide. The board had fallen from the upper portion of the building.
The plaintiff’s teacher was supervising the play activities of the children at the time, and was looking the other way, so she did not see the board when it fell and struck the infant plaintiff. The sole eyewitness to the actual accident was a classmate of plaintiff’s. This little girl testified that, while the children were playing in the schoolyard, she saw something come down from the roof and before she knew it the wood had hit the plaintiff on the head. The board which struck the boy had come from the direction of the roof of the school. The witness could not say precisely where it came from because it already was falling when she first saw it.
The policeman who investigated the accident arrived at the scene shortly thereafter, while the infant plaintiff was still on the ground unconscious. Upon arriving at the scene, he observed one of Bedden’s men standing at the bottom of a rope which extended down from the boom in the attic window and he also noticed a sling with lumber in it poised in the air about a story down from the boom.
After dismissing Schulman’s third-party complaints, the trial court submitted the case against Schulman to the jury, and charged in essence that it was a question of fact whether or not the work in the school area was inherently dangerous, and that if the work was inherently dangerous then the contractor Schulman had a nondelegable duty to provide proper safeguards and precautions.
On this charge, of course, the jury returned a verdict against Schulman (and the board) in the amount of $120,000, finding that the work was inherently dangerous and that proper precautions were not taken.
We must decide whether or not Schulman’s negligence was active or passive, or whether a question of fact exists as to the type of negligence under all of the facts and circumstances.
We agree with the dissenters below that the fulcrum of Schulman’s liability was not any act of negligence on the part of Bedden in permitting the plank to fall, but rather Schulman’s *451 own breach of duty in constructing the boom in the schoolyard play area, without providing safeguards or taking the necessary precautions in the area of known inherent danger (see, e.g., Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 9 N Y 2d 426; Harrington v. 615 West Corp., 2 N Y 2d 476; Crawford v. Blitman Constr. Corp., 1 A D 2d 398). Thus Schulman was found liable because of his own failure to safeguard the area, resulting in injuries to this plaintiff, without regard to whether the acts of rubbish removal were performed negligently or not. The record clearly shows that Schulman was chargeable with knowledge that Bedden might use the boom to lower the debris to the schoolyard. Admittedly Schulman did not expect or rely upon Bedden to provide the necessary safeguards, nor was it Bedden’s duty to do so under this arrangement with Schulman. Schulman merely instructed Bedden to report to the school office, which he did. Bedden had no authority over the work site, and no control or authority in regard to safety measures. Bather, he was a collector of debris who went about his job as instructed. In fact, Schulman himself constructed the boom which overhung the schoolyard, and as between Schulman and Bedden it was Schulman’s primary duty to provide safeguards (see Crawford v. Blitman Constr. Corp., supra, pp. 400, 401). This duty obviously was not fulfilled.
Acts of omission, of course, constitute active negligence as well as acts of commission, where there is an affirmative duty to act (Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., supra, p. 430; McFall v. Compagnie Mar. Belge, 304 N. Y. 314; Putvin v. Buffalo Elec. Co., 5 N Y 2d 447), and where such acts of omission concur in causing damages, there is no right of recovery over (Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., supra; Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. 461; McFall v. Compagnie Mar. Belge, supra, pp. 327-330).
The nondelegable duty of Schulman to provide the required, safeguards in the performance of inherently dangerous work in a public school area was “ active ” negligence, under the facts and circumstances of this particular case. Schulman’s failure to correct or safeguard the dangerous condition he created rendered him equally responsible with Bedden for the resulting injury. Schulman, therefore, has no cause of action against Bedden for indemnification.
*452 The order insofar as appealed from should be reversed, and the judgment of Trial Term dismissing the third-party complaints reinstated.
Chief Judge Desmond and Judges Dye, Fuld, Froessel and Burke concur with Judge Foster ; Judge Van Voorhis dissents and votes to affirm upon the majority opinion of the Appellate Division.
Order of Appellate Division reversed and judgment of Trial Term reinstated, with costs in this court and in the Appellate Division.